JOHN PINGLE ET AL. v. HENRY CONNER ET AL.

*Equity—Specific performance of contract—Injunction.*

It is a well-settled rule that equity will not interfere in cases of contract, and decree specific performance, unless it can be done mutually and completely.

Appeal from Macomb. (Hooker, J., presiding.) Argued April 12, 1887. Decided June 9, 1887.

Bill for specific performance of contract. Decree dismissing bill affirmed. The facts are stated in the opinion.

*Eldridge & Spier,* for complainants.

*A. L. Canfield* (*Edgar Weeks,* of counsel), for defendants.

MORSE, J. The complainants Pingle & Losen are omnibus proprietors in Mount Clemens, Macomb county. Brehler is proprietor of the Clifton House, and he and his wife are joint tenants of the realty upon which it is situated. Egnew is the lessee of the Avery House. The defendant Henry Conner is the owner of the Sherman House, which he leased to his sons, the defendants Edward H. and Walter J. Conner, on the first day of May, 1886, for the term of one year from the first day of April, 1886, with the privilege of another year.

On the eighteenth day of June, 1885, the complainants

and Henry Conner, and one R. B. Stevens, then proprietor
of the National Hotel, entered into the following agreement:

" Articles of agreement made and entered into this eigh-
teenth day of June, A. D. 1885, between John Pingle and
Charles Losen, of Mount Clemens, Michigan, parties of the
first part, and Henry Conner, of the Sherman House, E. R.
Egnew, of the Avery House, R. B. Stevens, of the National
House, and John E. Brehler, of the Clifton House, all of said
Mount Clemens, *Witnesseth*:

" The said John Pingle and Charles Losen, in considera-
tion of the several promises of the said parties of the second
part to sell and transfer to them, said first parties, their sev-
eral omnibuses, hacks, and teams heretofore used in the con-
veyance of guests at their several hotels to and from the
depot and boat landings in said city, and in consideration of
their several promises and agreements, upon the part of the
said parties of the second part to be kept and observed and
performed, herein contained, do promise and agree with said
parties of the second part that they will and shall provide
suitable and convenient busses, hacks, and necessary
vehicles, and will therein convey and transfer to the said
hotels of the said second parties all persons arriving at the
depot and boat landings in said city as shall so desire to be
conveyed and transported, and that they, the said Pingle &
Losen, shall and will charge therefor not to exceed the sum
of twenty-five cents for each person so transported each way;
and that they will provide such suitable vehicles for transport-
ing the guests of said several hotels to the depots and boat
landings, and transport the same at the rate above specified.

"That the said first parties shall and will cause their vehic-
les and means of transportation to be at the depot and boat
landings and at said hotels at seasonable and suitable times
to accommodate and convenience the guests of said hotels,
and will to the best of their ability, so transport and convey
the guests of the several hotels to and from the said depots
and landings as to accommodate the said guests, as well as if
the said second parties ran each their own bus or hack.

"And the said Pingle and Losen will in no ways endeavor
to further the interest of any of the second parties above
that of the others, but will freely and impartially deliver
their passengers and customers at such of the said several
hotels as said passengers shall direct, and that they will and
shall, in the conveyance of guests of said hotels, treat each
of said hotels impartially.

"In consideration of the foregoing promises and agreements upon the part of said Pingle & Losen, the said Henry Conner, E. R. Egnew, R. B. Stevens, and John E. Brehler do severally promise and agree to and with the said Pingle & Losen, and with each other, that they severally will and shall, during the time hereinafter provided herein for the continuance of this agreement, refrain from running any bus, hack, or vehicle for the conveyance of guests to their several hotels from the said depots or boat landings, or from said hotels to said depots or boat landings, and that they will not in any way be interested in any opposition to the business of said Pingle & Losen herein contemplated. And they do further severally and mutually agree and promise each other, and said Pingle & Losen, they will not, during said time, employ, or permit to be employed, at said depots or boat landings, any runners for their respective hotels.

"It is understood and agreed by the parties hereto that all charges for conveyance to and from said hotels are to be collected by said Pingle & Losen of and from the persons conveyed.

"It is further understood and agreed that the terms of this contract shall be binding upon the parties hereto, and shall continue, for the period of five years from and after the twentieth day of June, A. D. 1885."

The complainants allege that, in pursuance of this agreement, the said Pingle & Losen paid the sum of $1,950 for the said omnibuses, horses, harnesses, etc., and have incurred great expense since the date of said agreement in keeping up and maintaining their omnibus business.

They claim that the defendant Henry Conner was mainly instrumental in bringing about said contract, and that none of them would have entered into it had not the said Henry Conner bound himself as he he did therein.

They charge that Edward H. Conner was present when the agreement was read and signed by his father, and both he and his brother Walter knew of its contents.

They aver that Henry Conner became dissatisfied with his said agreement, and threatened to put on a free bus in opposition to the business of Pingle & Losen; that he entered into

this pretended lease of his hotel to his sons for the express purpose of evading his agreement, and that he and his family still remain and live in the said Sherman House, and he takes as much interest in its business as he ever did, and is in truth and in fact its real manager and proprietor; that the pretended leasing of the hotel was a conspiracy upon the part of said defendants to avoid said agreement and injure the complainants, and that, in pursuance of said conspiracy, the defendants, on or about the nineteenth day of June, 1886, commenced running a free bus to and from said Sherman House to all trains arriving in said city, and to all the boat land_ ings; that the driver of said free omnibus, and the runners of the said Sherman House, do all they can to keep persons from becoming guests at the hotels of complainants, decrying and slandering the character of said hotels, and otherwise, in a variety of ways, endeavoring to injure and ruin the business of complainants.

The complainants filed their bill July 29, 1886, setting forth the above facts and detailing their grievances, and asking that said defendants might be perpetually enjoined—

"1. From running said free omnibus, or any other omnibus, hack, or vehicle, to and from the depot and boat landings in said city of Mount Clemens, Macomb county, Michigan, for the conveyance of guests to and from the Sherman House (now called the Sherman), situate in said city of Mount Clemens, for the period of five years from and after the twentieth day of June, 1885.

"2. From having, hiring, or permitting runners for the Sherman House to be at the depot or boat landings for said hotel for the period of five years from and after the date of the agreement.

"3. From running an omnibus, hack, or other vehicle for the conveyance of passengers for hire, or free of charge, anywhere in said city of Mount Clemens, Macomb county, Michigan, in opposition to the omnibus business of John Pingle and Charles Losen, or either of them, for the period of five years from and after the twentieth day of June, A. D. 1885 ; and that your orators may have such other and such further

relief as may be agreeable to equity and good conscience."

Under the proper prayer a temporary injunction was granted.

The defendants admit the making of the agreement, and the expenditure of Pingle & Losen on account thereof.

Henry Conner denies that he made the lease to his sons for the purposes stated in the bill, or that he threatened to run a free bus; alleges that he went out of business on account of his advancing years, and denies any interest in said hotel business, or any control or management of the same, since the execution of said lease.

He avers that Pingle & Losen have not fairly executed and performed their part of the agreement, and that they discriminated against his hotel, before he leased it, in such a manner as to greatly injure his business. He further states his financial ability to pay any damages that the complainants may have sustained because of his alleged violation of the contract, which violation he disclaims and denies.

Edward H. and Walter J. Conner in their answer aver that said complainant Egnew and R. B. Stevens did not own the realty of the respective hotels operated by them at the time the contract was made, and that Brehler had but a limited interest in the real estate of the Clifton House. They allege the unfairness of Pingle & Losen towards the Sherman House, and a violation of their contract in this respect. They aver that Stevens sold his interest in the National House to one Morgan, December 9, 1885, and that from the fourteenth of the same month, and up to the date of their answer, a free bus had been run in the interest of and from said National House. They aver the entire good faith of their lease, and deny that their father has any control of or interest in the business of said Sherman House.

They further allege that, after they became proprietors of the hotel, they discovered that Pingle & Losen were discriminating against them, and in favor of the other hotels. They

protested against it, but without avail. As the conduct of Pingle & Losen was injuring their hotel business, they threatened to put on a free bus unless such action was discontinued; and Pingle & Losen persisting in their unfairness, they purchased a bus in June, 1886, and have since the middle of that month operated the same. They allege that they were obliged to do this as a matter of self-protection, but deny that the running of said bus is of any great damage to complainants.

The defendants also, in their answers, submit that the complainants have a full and adequate remedy at law, and are not entitled to any relief in a court of equity.

Proofs were taken, upon the issues joined, in open court, before Hon. Frank A. Hooker, circuit judge. Upon the hearing he dismissed the complainants' bill, from which decision they appeal.

The evidence shows that, at the time of the making of this agreement, June 18, 1885, which contract by its terms was to continue in force for five years, Henry Conner was the only hotel man occupying such a position, as sole owner of the realty in fee, that he could of his own will carry out the agreement. Egnew was a lessee of the Avery House, with an uncertain tenure. Brehler was a half owner of the Clifton House as long as he lived. The property was held in joint tenancy with his wife, and, under the law in this State, would, in case of his death before that of his wife, become hers absolutely, and he could not burden the property beyond his life. Stevens held the National Hotel by a lease, but he sold out to Morgan in December, 1885, who ran a free bus up to July, 1886, when he sold out to another party.

It also appears that, since the contract was made, a new hotel has been constructed and opened, and is being run by complainant Egnew.

The circuit judge, in a written opinion which is printed in the record, says:

"It is a well-settled rule that equity will not interfere in cases of contract, and decree specific performance, unless it can be done mutually and completely. The contract in question is one by the terms of which Pingle & Losen not only undertake to run a hack line impartially, but four other persons agree, with Henry Conner, that they will not run free busses to their respective hotels. The proofs show that some of these persons were and are not in a situation to carry out their agreement, for the reason that they did not control their respective hotels for the period of five years. Already one of these hotels has changed hands, and a free bus was run from that for some months before defendants put on theirs; and while, as a matter of fact, it has since been taken off, nothing appears that will prevent the present proprietor of that house from disregarding the contract in controversy. There is nothing in the case to show that any one of the hotel keepers have the right to the premises occupied by them for five years, or any other time, and a decree compelling the defendants to observe and perform it, when it cannot protect them, would do violence to the rule above mentioned. It will readily be seen that, should the other houses run free busses, the inability of the defendants to run one might be very disastrous indeed; and, while this might not impair the right of the complainants to recover any damage resulting to them by reason of a violation of the contract on the part of Conner, equity cannot interfere."

This concise statement seems to us to be correct. It is therefore useless to consider the other points raised by counsel upon the argument, or enter into the merits of the controversy. It would be manifestly unjust, and not in accordance with any practice or principle of equity, to tie up these defendants, and enjoin them from running a free bus until the twentieth of June, 1890, when they are left powerless to prevent, by any legal means, save a new barter or agreement with others, the running of a free bus, during that time, from and to every other of the hotels mentioned in this agreement. The injunction asked, if granted, would be liable to do more injury to defendants than it could possibly benefit complainants, who are not confined to equity for redress if they have been wronged. It would not be con-

scientious to enforce this contract by injunction as the parties are situated.

The decree of the court below is therefore affirmed, with costs of both courts, but without prejudice to the commencement of any other action by complainants, or any of them, to recover damages for the alleged violation of the agreement by the defendant Henry Conner.

The other Justices concurred.