SAMUEL F. STEWART v. JAMES M. PIERCE, THE HOMESTEAD COMPANY, et al., Appellants.

Equity Jurisdiction: DISSOLUTION OF CORPORATION: *Right of corporators to wind up corporation.* Code, section 1629, providing that corporations whose charters expire by limitation may continue to act for the purpose of winding up their

affairs, does not preclude a court of equity from winding up the affairs of such a corporation when necessitated by internal dissensions in the corporation, but only authorizes a continuation of the business by the corporation managers for an amicable settlement of the corporation's affairs.

ORDER OF SALE OF CORPORATE PROPERTY: Held in name of stockholders. An order for the sale of corporate property in a suit to wind up its business after its charter had expired by limitatation may properly direct the sale of real estate held in the name of stockholders, but belonging to the corporation.

SUIT TO DISSOLVE BY STOCKHOLDER: Order of sale. A corporation whose charter has not expired will not be dissolved at the suit of a stockholder, and it is error to direct a sale of the property in a stockholder's suit.

STOCK HELD IN OTHER CORPORATIONS: Sale of property of such corporation. A court of equity, on winding up the affairs of a corporation on the expiration of its charter, cannot order a sale of the property of another corporation, though all the stock of the latter belongs to the former corporation.

RIGHTS OF STOCKHOLDERS: Voting stock. Where the court finds that a stockholder owns one-half the stock of a corporation, the other stockholders may properly be enjoined from voting more than one-half thereof.

Injunctions: CANNOT MAKE OR EXTEND CONTRACTS. An employe of a corporation, though owning a half interest in its stock, and being a party to the contract with the owners of the remaining stock providing for equal control of the stock and for equal services, cannot, on the expiration of the term of his employment, compel the corporation by injunction to continue the employment, as the court has no power to make or extend contracts.

SAME: Possession of property by court. The court is not justified in granting the injunction on the ground that the property of the corporation is in the possession of the court, in an action pending therein, when it has not taken possession of the property through an officer appointed for such purpose, but has only gone to the extent of directing what the corporate officials shall do in the control of the property.

Contracts: CONSTRUCTION BY PARTIES FOLLOWED. Where a contract is not as definite and certain as it might have been made, but, when read in the light of surrounding circumstances, and in connection with a practical construction given it by the parties,

showing their understanding of it as giving one of the parties thereto an equal interest in the stock of the corporation acquired in pursuance thereof, it will be so construed, as the construction given a contract by the parties thereto may be considered in its interpretation and may be of controlling importance.

ENFORCEMENT:    *Separable provisions.*    Where the several provisions of a contract are separable, a valid provision may be enforced though other provisions are invalid.

New Trial on Motion:    CAN BE ENTERTAINED BY TRIAL COURT ONLY. The statute relating to new trial only applying to the trial court, the supreme court has no jurisdiction to hear and determine a motion therefor.

Waiver of Appeal:    GRANTING TEMPORARY INJUNCTION:    *Going to trial in main case*    Where an order granting a temporary injunction is made at a time prior to a material change in the issues, the right to appeal therefrom will not be waived by going to trial on the main case after the change in the issues; and the appeal will be considered, though the questions presented might be considered on appeals taken by both parties from the final hearing.

*Appeal from Polk District Court.*—HON. C. P. HOLMES and S. F. PROUTY, Judges.

FRIDAY, FEBRUARY 14, 1902.

THIS is an equitable action, in which the plaintiff alleges that he is the owner of one-half of the capital stock of the Homestead Company and of the Pierce-Wallace Publishing Company. He asks a decree establishing his ownership in the stock claimed, and for other relief as herein stated. The Homestead Company was a corporation with a capital stock of $20,000, divided into 200 shares. The Pierce-Wallace Publishing Company is a corporation with a capital stock of $60,000, divided into 600 shares. On the eighth day of January, 1895, the plaintiff owned 70 shares of the stock of the Homestead Company, the Pierce-Wallace Publishing Company owned 118 shares of its stock, the defendant owned 1 share, Henry Wallace owned 1 share, 9 shares stood in the name of Frank Dun-

ning, and 1 share in the name of A. G. Lucas. The Pierce-Wallace Publishing Company stock was owned in equal shares by Henry Wallace and the defendant Pierce. The Pierce-Wallace Company owned a publication known as the "Wisconsin Farmer" and one known as the "Live Stock Indicator." Both of these papers were issued from the Homestead office in Des Moines. On the eighth day of January, 1895, the plaintiff and the defendant Pierce entered into a written agreement, which is set out in full as follows:

"This agreement, made this eighth day of January, 1895, by and between James M. Pierce, of Des Moines, Iowa, and Samuel F. Stewart, of Evanston, Illinois, witnesseth:

"1st. That by the terms of this contract all differences between them are settled, compromised and adjusted forever.

"2nd. That from and after January 1, 1895, said Stewart shall be employed by the Homestead Company, of Des Moines, Iowa, as advertising solicitor, to have general charge of the territory east of the Mississippi river, until otherwise agreed upon, and said Pierce shall be employed by said company as business manager, each to receive a salary of three thousand dollars ($3,000) per annum and hotel and traveling expenses while engaged in the business of the company, payable monthly; such employment to continue until July 1, 1900.

"3rd. That the Homestead Company shall pay to said Stewart in settlement of his claim for salary since October, 1892, and up to January 1, 1895, twenty-two hundred and forty-five dollars ($2,245), the same to be paid in installments within a reasonable time.

"4th. The Homestead Company will, whenever it can be done upon satisfactory terms, acquire the assets of the Pierce-Wallace Publishing Co., and also the lot of ground upon a part of which the building now occupied by said

Homestead Company stands, and which lot is now owned by said Pierce and Henry Wallace. To this end said Pierce hereby agrees with said Stewart that he will sell and convey an undivided half of his interest in said real estate to said Stewart at net cost to him, and they shall both convey their interests to the Homestead Company as soon as it shall acquire the interest of said Wallace.

"5th. It is the purpose, intent and spirit of this agreement that said Pierce and Stewart shall stand and continue in every respect equal in the ownership, management and control of said Homestead Company; and to this end it is expressly agreed and understood that, should either of them at any time hereafter acquire the stock of Henry Wallace in the Pierce-Wallace Publishing Company, or in any part of it, or the stock now owned by said Wallace or that formerly owned by him in the Homestead Company and now held by said Pierce-Wallace Publishing Company, or any part of it, or the lot described in paragraph 4 hereof, he shall be deemed and understood as holding, and it is hereby agreed that he will hold the same, one-half for himself and one-half as trustee for the use and benefit of the other; he to be reimbursed for one-half the cost of same, including the expenses of acquisition, if any, and will thereupon, upon request, make transfer accordingly.

"6th. In specifying the equality of interest of said Pierce and Stewart in the Homestead Company, it is agreed and understood that said Stewart owns and represents the seventy shares of stock now standing in his name on the books of said company, and that said Pierce represents and can and will control the seventy shares of stock now standing on the books of the company, nine shares in the name of Frank Dunning, one share in the name of A. G. Lucas, one-half of one hundred and eighteen shares in the name of the Pierce-Wallace Publishing Company, and one share in his own name; and said Pierce hereby agrees to be personally responsible that said shares.

of stock shall at all times act in harmony with and assist
in carrying out this agreement, as well as an agreement
executed by and between the Homestead Company and said
Stewart concurrently herewith.

"7th. Upon the execution of this agreement, and also
of a concurrent agreement, to be · executed by and
between said. Stewart and said Homestead Company,
it is agreed that the suits of said Stewart against
said Pierce and against Lafayette Young, now pending in
the district court of Polk county, Iowa, shall be disposed
of as settled and dismissed; and it is further understood
and agreed that the suit of said Stewart against the Home-
stead and others now pending in the United States circuit
court for the Southern district of Iowa, Central division,
shall be considered settled as to said Pierce, but shall be
retained on the docket for such hearing and decree, if any,
as may hereafter be deemed advisable in the interest of the
parties hereto and of said company; but whenever it is ap-
parent that said suit cannot be of further service to the
parties hereto and to said company in carrying out this
agreement, it shall also be disposed of, settled and dismissed.
All costs and attorney's fees and expenses for complainant
and for Pierce in said cause shall be paid by the Home-
stead Company. Any advantages accruing from the con-
tinuation of the said suit shall be for the equal benefit of
the parties hereto.

"8th. As soon as convenient, hereafter, Frank Dun-
ning shall resign as secretary and member of the board of
control of the Homestead Company, and said Stewart shall
be elected to fill said positions, and shall be continued in
them, and said Pierce shall be continued as president and
member of the board of control, both until July 1, 1900.
Should a vacancy occur in the office of treasurer, either
said Pierce or said Stewart, as they may agree, may be
elected treasurer; but in such event it is distinctly under-
stood and agreed that he shall not be entitled to two votes
in the board of control because of holding two offices.

"9th. Every effort will be made by the parties hereto to avoid friction, misunderstanding, or difference; but if and as often as disagreement between said Pierce and Stewart shall arise upon any matter concerning said Homestead Company, its business, management, or policy, or concerning the discharge by said Pierce or Stewart of his duties to said company under his contract of employment, which disagreement they cannot harmonize, the same shall, at the request of either party, be submitted to arbitration in the usual manner. Should either party hereto refuse to choose his arbitrator for five days after written notice served on him by the other party, then application may be made to any judge of the district court of Polk county, Iowa, assigned to the chancery docket to appoint such arbitrator, and, should he decline to make such appointment, then the arbitrator for the party so refusing shall also be selected by the other party. In case of arbitration as herein provided, the decision of the arbitrators shall be entered on the books of the Homestead Company with the proceedings of the board of control, and such decision shall be final.

"10th. There being certain provisions in this agreement concerning the Homestead Company which it may not be legally bound to perform, at least, without the unanimous consent of the stock, the parties hereto expressly agree that each of them will be responsible personally for. and it is hereby guarantied, that the same will be ratified and performed to the extent of the seventy shares of stock in said company owned and represented by him as well as of any other stock in said company which he may hereafter acquire, failing in which he agrees to be personally responsible for any loss or damage which the other party may sustain by reason of such failure.

"11th. The charter of said Homestead Company will expire about July 1, 1900. Should no satisfactory agreement be made for renewal or extension of such charter, or

some satisfactory plan agreed upon for the disposition of the property and plant of said company, on or before May 1, 1900, then it is hereby agreed that the entire property. plant and good will of said Homestead Company as a, whole, except the real estate, shall be advertised for not. less than thirty days, and shall be sold at public sale to the highest bidder not later than July 1, 1900. The real estate shall be disposed of as may hereafter be agreed upon, or in the absence of any such agreement, as the law may direct.

"12th. Should either of the parties hereto desire to sell his entire holding of stock in the Homestead Company, he shall give the other party the option for twenty days to take the same at the selling price. There being no way of proving the damage which might be sustained by reason of a breach of this provision, it is hereby agreed that for a breach of the same the selling party shall forfeit and pay to the other party the sum of five thousand dollars (5,000), the same being expressly agreed upon as liquidated damages, and not penalty. It is further expressly agreed and understood that in the event of the death of either said Pierce or Stewart this provision shall apply to, govern and control the disposition of the stock in the hands of the executor, administrator or legatee of such decedent, and the penalty herein provided shall apply equally in such case, and shall be a liability against the estate of such decedent or against his legatee, as the case may be, equally as it would be a liability against him if living; provided, however, that, should said stock in the settlement of the estate of such decedent be ordered by the court to be sold at public sale, then this provision shall not be applicable as to such sale.

"13th. The parties hereto mutually agree that neither of them will do anything, either individually or as an officer or stockholder in said Homestead Company, to deprive the other of the benefits of his contract of employ-

ment, without just cause first made known and established by arbitration, as hereinbefore provid'ed. . Then he agrees that he will forfeit and pay to the other party.a sum equal to the salary which would accrue to the other under his contract of employment for the time he has thus been deprived of the benefits of the same, less whatever sum he may have earned, or which the other party can show he might with reasonable efforts have earned, during such time.

"14th.  In case of the death of either party hereto while in the employ of said Homestead Company, as hereinbefore provided, it is agreed that said company shall pay to the widow of the decedent, or, if no widow, then to his child or children, one thousand dollars.

"Witness our hands to duplicate copies hereof the day and date first above written.

"Jas. M. Pierce.
"S. F. Stewart.

"Additional.  January 28, 1895.  If within a reasonable time it shall not be practicable to perform the third paragraph of this contract, then we agree to adjust the item of $450, cost of libel cases, by each paying one-half."

The foregoing contract was originally made the basis of this action, and the plaintiff plead'ed further that in violation of its terms he had been discharged from the service of the Homestead Company after June 30, 1900, and refused permission to continue in its employment at the salary therein agreed upon.  In addition to other relief, the plaintiff asked that a temporary injunction issue restraining the defendant Pierce from in any manner interfering with him in his work as advertising solicitor for the Homestead Company "under the same terms and conditions" under which he carried on same pursuant to the contract of January 8, 1895.  A temporary writ was granted as prayed in this respect, from which order the defendants appealed.  Afterwards the petition was amended by setting out letters of the parties which

were pleaded as a part of the final contract between them. After this amendment the case was tried on its merits, and a decree was entered adjudging the plaintiff to be the owner of one-half of the capital stock of the Homestead Company and of one-half of the stock of the Pierce-Wallace Publishing Company, and ordering a sale of the entire stock of both companies and of the stock of the Wisconsin Farmer and the Live Stock Indicator. From the final judgment in the main case both parties appeal. The main case was advanced for hearing at the October, 1901, term, and the appeals therein are consolidated with the appeal from the preliminary order, and all are submitted together.

*Huston & Lauder* and *Conner & Weaver* for plaintiff.

*N. T. Guernsey* for defendant.

SHERWIN, J.—We will first consider the appeal from the order granting the temporary injunction. A motion to dismiss this appeal was filed, and was submitted with the case. The ground upon which the motion is based is that the appeal was waived by proceeding to trial in the main case, and because the final decree dissolved the temporary writ as to the employment of the plaintiff. If the issues and the evidence that were presented to Judge Prouty upon which his order was of course based were the same in all respects as those upon which Judge Holmes based his final decree, a much stronger reason would exist why this motion should be sustained, for it might then be said that the defendants, by invoking the judgment of the court on this particular question, had waived the appeal taken from the preliminary order. But such is not the situation, for after that order was made a material change was made in the issues presented by the plaintiff, and the case as thus changed was heard and determined finally. As the main case comes to us upon appeals by both sides, the question that is here presented

might be therein determined as well as elsewhere, but we do not deem this a sufficient reason for dismissing the former appeal. The motion is therefore overruled.

I. The principal contention on this first appeal is that the court had no power or authority to make an order in the form of a preliminary injunction continuing the plaintiff in the employment of the Homestead Company, and this is the question that we shall consider in this connection. The corporate existence of the Homestead Company expired by limitation on or about the first day of July, 1900. By reference to the second clause of the contract of January 8, 1895, it will be seen that it provides for the employment of both Stewart and Pierce from January 1, 1895, to the first of July, 1900, at the agreed annual salary of $3,000 each. On the sixth of July, 1900, the defendant Pierce, who was then acting as business manager, and who then claimed to be the owner of three-fourths of the Homestead stock and three-fourths of the Pierce-Wallace stock, sent out a circular in the name of the Homestead Company advising the patrons of the paper that the plaintiff, Stewart, was no longer connected with its advertising department, and other solicitors were placed in the territory formerly occupied by him, and he involuntarily ceased work in that capacity. The preliminary order restrained the defendant Pierce, "both personally and as acting for or in the name of or jointly with others, * * * * from in any manner interfering with the plaintiff in his work as advertising solicitor for said Homestead Company under the same terms and conditions under which he carried on and conducted the same, with all the rights and incident to the descharge of those duties as performed and enjoyed by him prior to July 1, 1900, including the use of railroad transportation as theretofore." It is clear that the language of the order above given does not purport to protect any of the rights of the plaintiff as a stockholder, officer, or director of the Home-

stead Company. It is purely an order restoring him to his old position as an employe thereof, with all the rights and benefits connected therewith. The order will bear no other construction, and it is as broad as the facts would justify, for the record does not show any interference with the plaintiff's rights as a stockholder in the Homestead Company. The question, then, is narrowed down to the single proposition whether a court of equity has the power to renew a contract of employment, or to make a new one for the parties. This is the sole question involved here, as we view it. That the court has no such power we believe is elementary, and is the uniform holding of the courts. The contract made with the Homestead Company in 1895 only provided for the plaintiff's employment until July 1, 1900, and that time had expired. It is also well settled that courts will not require specific performance of existing contracts for personal services, at least where full compensation in damages may be recovered. The plaintiff could not have been compelled to continue in the employ of the Homestead Company under the contract in question before its life expired. If he had seen fit to leave the service of the company, it would have been left to an action for damages therefor. Pomeroy, Contract, sections 162-165; *Campbell v. Potter,* 147 Ill. 576 (35 N. E. Rep. 364); *Pingle v. Connor,* 66 Mich. 187 (33 N. W. Rep. 385); *Grimmer v. Carlton,* 93 Cal. 189 (28 Pac. Rep. 1043, 27 Am. St. Rep. 171); *Wakeham v. Barker,* 82 Cal. 46 (22 Pac. Rep. 1131); *Richmond v. Railroad Co.,* 33 Iowa, 422.

II. It is insisted, however, that, as the contract between the plaintiff and Pierce provided for equal control of the property and for equal service, the court was justified in continuing the plaintiff's contract of employment. But we cannot see that this situation, if true, would justify the order. The fact that both were owners of an equal amount of the stock of the Homestead

Company would certainly not in itself entitle the plaintiff to employment by the company at any time. After the expiration of his contract he is in no better situation than any other stockholder without a contract. It is further argued that the order was proper because the entire matter was in the hands of the court, and, such being the case, the court had full control over the property. But this is not so. The suit between the parties was pending, it is true, but the court had not taken charge of the property by any officer appointed for that purpose. It had only gone to the extent of directing what should and what should not be done by the defendants in the management thereof, in order to protect the plaintiff's rights. The property itself was in no way or sense under the control of the court, nor were the officers of the Homestead Company or its affairs under its control and management. The order restoring the plaintiff to the employment of the company cannot be sustained.

III. The controlling question in the main case is the interest of the plaintiff in the stock of the Homested Company and in the Pierce-Wallace Publishing Company. He claims that under the contract of January 8, 1895, as amended or enlarged by the letters of February 22, 1896, and March 2, 1896, he became the owner of one-half of the stock of both companies as soon as the Wallace interest was obtained, while the defendant asserts that the contract of January, 1895, did not contemplate the purchase of any of the stock by Stewart, but by the Homestead Company, and that Stewart acquired no right to this stock under this contract. Further, that the letters referred to, which are set out below, do not help the original contract in this respect, because too indefinite and uncertain; and that in themselves they do not constitute a contract supporting the plaintiff's claim. The letter of February 22d, written by the plaintiff to the defendant, is as follows: "My suggestion to you for a fair division between

us, in case we can buy it, of the cost of Mr. Wallace's interest in the Homestead Company, Pierce-Wallace Company, and the entire lot purchased by you and him of the bank, and on which the Homestead Building stands, is as follows. And to state it clearly, I must assume that the Pierce-Wallace Company be dissolved, and that its property, which consists only of the entire stock of the Wis. Farmer and the Live S. Indicator and 118 shares of the Homestead stock, shall be divided equally between you and Mr. Wallace. The figures given are intended to be by way of illustration, rather than a correct statement of the cost of the property. Suppose, then, that we can buy half the stock of the Wis. Farmer and Indicator and 60 shares of Homestead stock and half the interest in the real estate from Mr. Wallace, free of all liens (except the mortgage on the real estate of $10,000), for $20,000, and that you have paid for half the stock in the Wis. Farmer and Indicator $7,000, and for or on half interest in the real estate $1,200, then the total cost to us of this property, which is to be divided equally between us, would be $28,200, of which I would pay to Mr. Wallace $14,000, and you would pay to him $5,900. If we could buy Mr. Wallace's entire interest for $12,000, and you have already paid $8,200, that would make the entire cost to us, $20,200, of which I would pay to Mr. Wallace $10,100, and you would pay to him $1,900. It might make the matter clearer to assume that you would purchase Mr. Wallace's entire interest, and pay him for it, and that I would buy the half interest of you, and pay you one-half of all you had paid for the Wisconsin Farmer, L. S. Indicator, 60 shares of the Homestead stock, and the lot bought of the bank on which the Homestead building stands. My intent is,— and yours the same, as I understand it,—starting at the point where we each owned $7,000 of the Homestead stock (counting the stock owned by Mr. Dunning and Lucas as yours), to calculate the cost of the entire plant subsequently purchased, Wis. Farmer, Indicator, Wallace's Homestead stock, and the

real estate,—and each pay half of it. I think this covers the
entire ground, and accords with all our previous arrangements.
If it meets your views, please let me know, when you have
considered it. I find that I cannot make clear and concise
statements of the matter without assuming that the Pierce-
Wallace Co. be dissolved, but it does not follow necessarily
that it must be dissolved in order to carry this out. If there
is anything that should be omitted or added to this to make it
clear and cover the ground, please let me know." In answer
to this letter the defendant Pierce wrote as follows: "Mr.
Stewart: Your letter with reference to basis of settlement,
between you and me, in case we, or either of us, should succeed
in buying Mr. Wallace's stock, duly received. I think we both
understand the matter alike, so far as the general principle on
which the matter is to be settled is concerned. There is some
difference in our figures, however. You put the amount of
our equity in the lot at $1,200 each. It should be $1,250 each.
As to the price of the Indicator and Farmer, my understanding
is that we are to count our settlement just the amount of
money that has been put into the two properties; in other
words, just what they have cost us, whether that amount be
$12,000 or $13,000 or $15,000, more or less." The plaintiff
relies on the written contract as completed by these two letters.
Mr. Wallace was a thorn in the flesh of both of these parties
when the original contract was entered into and when these
letters were written, and it is the undisputed evidence that it
was the purpose of both to buy his entire interest in the Home-
stead Company and in the Pierce-Wallace Company, so that
both properties, with all that properly belonged thereto, would
be under their absolute control; and this was finally accom-
plished. It is true, as contended by the appellant, that the
contract as completed is not as definite and certain as it might
easily have been made; but, when read in the light of the cir-
cumstances surrounding the parties at the time, and in con-
nection with the practical construction given it by the parties
themselves, there can be little doubt as to their intention. It

is well settled by the authorities that in case of doubt as to the intent of the parties to a contract "the interpretation which the parties by their acts under their contract have practically given it will have weight, and it may be controlling." Bishop, Contracts, section 412; Pollock, Contract 392. The Wallace interest in the properties in controversy was in fact purchased as provided for in the contract, and the acts of both Stewart and Pierce subsequent to the purchase and until difficulties arose between them clearly indicate the mutual understanding that they were half owners, each, of all the property which was the subject of the contract. On this theory and on it alone, can the acts and declarations of the parties, both written and oral, be reconciled. It is conceded that the contract provides for the purchase of the Pierce-Wallace Publishing Company stock by the Homestead Company. The latter company would, if appellant's contention be true, also become the owner of a part of its own stock; and on this theory of the case, if Stewart was to be an equal owner with Pierce of the Homestead property, he would be entitled to 30 shares of its stock in addition to that already held by him, which was 70 shares. We are firmly convinced that the parties intended by their contract to become equal owners of the stock in controversy, and that this intention was carried out by both until the plaintiff had paid nearly all that was due from him for his share therein; that he is the owner of one-half of the stock of the Homestead Company and of one-half of the stock of the Pierce-Wallace Publishing Company, which includes also the Wisconsin Farmer and Live Stock Indicator.

IV. That part of the contract which provides for the permanent employment of Stewart and Pierce is not, in our judgment, absolutely void. It is possible that it was voidable at the instance of some of the stockholders of the Homestead Company, and for the purposes of this case such conclusions may be conceded. Kerr, Fraud & Mistake, 48; *Pearsoll v. Chapin,* 44 Pa. 9; *Brightman v. Bates,* 175 Mass. 105 (55 N. E. Rep. 809); 3 Thompson, Corporations,

section 4017. But however this may be, it does not appear to us to be controlling, because that part of the contract has been fully executed, and we are not now asked to enforce it in any way so far as this branch of the case is concerned. *Planters' Bank of Tennessee v. Union Bank of Louisiana,* 16 Wall. 483 (21 L. Ed. 473); *Armstrong v. Bank,* 133 U. S. 433 (10 Sup. Ct. Rep. 450, 33 L. Ed. 747); *Manchester & L. R. R. v. Concord R. R.,* 68 N. H. 132 20 Atl. Rep. 383, 9 L. R. A., 689, 49 Am. St. Rep. 582.) The contract in question is separable, and only the concededly valid part thereof is sought to be enforced. That this may be done is well settled. *Osgood v. Bander,* 75 Iowa, 550.

V.  The defendants' contention that the contract in question was abandoned by the joint agreement of the parties hereto with Wallace in 1897 is not sustained by the record. That agreement was for the sale to Stewart and Pierce of the Wallace holdings in the Homestead Company and in the Pierce-Wallace Publishing Company. It does not purport to be a contract between Stewart and Pierce. It is true that some of its language is not in exact harmony with the claim made for the contract between these two parties; but they were then dealing with Wallace, and it was not necessary that their contract with him embody the specific terms of their own. The principal thought running through it is that the interest of Wallace shall be sold to these parties, and while it may in some respects change the details of their agreement as originally made, it does not, in our judgment, show an abandonment of the previous contract, or appear inconsistent therewith in its controlling features.

VI.  Section 1629 of the Code provides "that corporations whose charters expire by limitation · * * * may nevertheless continue to act for the purpose of winding up their affairs." This provision of the Code does not, in our judgment, preclude the winding up of the affairs of a corporation whose charter has expired by a court

of equity. Its evident purpose is to permit the closing of corporate business by the duly-constituted managers thereof, when it may be done in the usual course of business; in other words, it refers to an amicable settlement of corporate affairs. If it shall appear to a court of equity that it should take charge of such business, this statute does not stand in the way of its so doing. Where the charter has expired by limitation, and there are "violent internal dissensions in the corporation," as in this case, we see no reason why a court of equity may not take charge of its property for the protection of all stockholders, and the winding up of the concern. Cook, Stock, Stockholder & Corporation Law (2d Ed.), section 684; Morawetz, Private Corporation (2d Ed.), section 281. While the courts will ordinarily leave the affairs of a corporation in the hands of those duly elected to manage it, and where it appears necessary to appoint a temporary receiver, will discontinue such receivership as soon as possible, it by no means follows that, where the charter has expired, and it is the duty of its officers to close the corporate business as soon as possible, and they have no other power under the statute, a court of equity may not, at the instance of a shareholder, upon proper showing, wind up the affairs of the corporation. See, in this connection *Mason v. Mining Co.*, 133 U. S. 50 (10 Sup. Ct. Rep. 224, 33 L. Ed. 524.)

VII. The real estate in question was in fact the property of the Homestead Company, though the title stood in the names of Stewart and Pierce, and it was properly included in the order for the sale of the Homestead property.

VIII. The Pierce-Wallace Publishing Company is a corporation entirely distinct from the Homestead Company. It was at the time of the purchase thereof by Stewart and Pierce the owner of the Wisconsin Farmer and the Live Stock Indicator. The trial court ordered the sale of the Pierce-Wallace Publishing Company property, including the property of the two last named con-

cerns; and this, we think, should not be done. Each corporation is a distinct and separate legal entity, as much so as are individuals. The Pierce-Wallace Publishing Company has still several years of life under its charter. That a court of equity has no power to dissolve or end the existence of this corporation at the instance of a stockholder thereof is too well settled to require the citation of authorities in support of the proposition. The property of the corporation is also entirely distinct from the property in the shares of stock issued by it, and the stockholders are not the owners of its property as individuals. *Van Allen v. Assessors,* 70 U. S. 584 (18 L. Ed. 229); *Button v. Hoffman,* 61 Wis. 20 (20 N. W. Rep. 667, 50 Am. Rep. 131); *Bank v. Construction Co.* 97 Ga. 1 (25 S .E. Rep. 326, 33 L. R. A. 800); *Mason v. Finch,* 28 Mich. 282; *Humphreys v. McKissock,* 140 U. S. 304 (11 Sup. Ct. Rep. 779, 35 L. Ed. 473). As we understand the record, there is no claim, even, that the Homestead Company owned the stock of the Pierce-Wallace Publishing Company; but if it did, the stock itself only could be sold, and not the property of the corporation, however much or however little there may be of it, for a sale of the property would practically work a dissolution of the corporation at the instance of some of its stockholders. The property of the Pierce-Wallace Publishing Company, including the Wisconsin Farmer and the Live Stock Indicator, should not have been ordered sold, and the decree is modified in this respect.

IX. The accounting of the trial court is substantially correct, and will not be disturbed.

X. Finding, as we do, that Stewart is the owner of one-half of the stock of the Homestead Company and one-half of the stock of the Pierce-Wallace Publishing Company, the order of the court restraining the defendants Pierce, Dunning, and Lucas from voting more than one-half of said stock is right.

XI. The defendant Pierce has filed in this court a motion, and in the trial court a petition, for a new trial based on

the ground of newly-discovered evidence. He also asks a continuance here until his petition below can be disposed of. The statute authorizing the filing of a petition for a new trial applies only to a new trial in the court below. We have no original jurisdiction to hear and determine cases either in law or in equity. If we were to consider petitions for a new trial here, and consider the newly-discovered evidence brought directly and originally before us, we would be acting as a court with jurisdiction to hear and determine questions of law and the evidence without the intervention of a trial court, and we think such action would be in direct violation of the statute both in letter and in spirit. There is, perhaps, some reason why a continuance of a cause should be granted here pending a petition for a new trial in the court below, and it is difficult to establish a rule which shall be adhered to in all cases. The principal thing to be said in favor of the continuance is that the entire case may be presented to the court at the same time, and by so doing relieve the court of the necessity of twice investigating the records presented, as must necessarily be the result in many cases. On the other hand, to grant a continuance in all cases of this kind would result in great delay, and in possible injury to the party not asking the delay. Here the motion for a continuance was submitted with the case, evidently with the thought of settling the point of practice, and we are inclined to hold that motions of this character should be disposed of independently of the case. This will avoid delay, and lighten the work of the court as much as any other procedure except an agreement by the parties covering the matter.

The motion for a continuance and the motion for a new trial are overruled. The order continuing the plaintiff in the employ of the Homestead Company is REVERSED. The decree in the main case is AFFIRMED on the plaintiff's appeal, and MODIFIED and AFFIRMED on the defendants' appeal as herein indicated.