JOHN F. BRAUN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 40700.　Promulgated June 2, 1931.

*J. Warren Brook, Esq.,* and *G. Ruhland Rebmann, Jr., Esq.,* for the petitioner.

*J. Arthur Adams, Esq.,* and *Frank A. Surin, Esq.,* for the respondent.

OPINION.

ARUNDELL: The respondent is contending, among other things, that the loss, if any, was sustained·in or prior to 1925, and since under the statute losses are deductible only within the taxable year in which sustained, his refusal to allow any loss deduction in 1926 on the stock transaction should be approved. We think the facts support his position.

In April, 1924, the liquidating trustees, of whom petitioner was one, sold the last asset of the corporation and executed and delivered a deed therefor, which instrument was within three months placed on record by the grantee. Thereafter in 1924 the trustees determined that when the sales price had been paid and settlement made with creditors, including a fee to the trustees of $25,000, there would be available for distribution to stockholders as a liquidating dividend a sum equal to 22 per cent of the par value of their stock. Due to the inability of the Yorktown Hotel Corporation to raise the money, cash could not be paid for the land and the proposition of accepting its stock in lieu thereof was suggested to the trustees. All of the corporation's creditors and most of its stockholders, including petitioner, agreed to the plan, and the deal was completed on that basis. On the surrender in November, 1925, of his stock of the Jamestown Portland Cement Company, petitioner received as a liquidating dividend his proportionate share of the stock received from the Yorktown Hotel Corporation for the land. This distribution of assets closely approximated the estimate made by the trustees in 1924.

While conceding that there had been an actual and complete distribution in liquidation in 1925, petitioner contends all this was only tentative until the court had approved the sale of the property, including the acceptance of stock of the purchasing company in payment thereof, the fee fixed as compensation to the trustees, and the method of liquidation.

The statutes of Virginia contain provisions giving directors full power to settle the affairs of dissolved corporations as trustees and divide any money or other property left in their hands among the stockholders within three years after dissolution. Sections 3810 and 3812. Section 3810 also provides that in case the affairs of a corporation are not wound up by the trustees within three years,

they shall be settled in the manner provided by section 3813. This section provides that on application of any creditor or stockholder of a dissolved corporation, any court having equitable jurisdiction in the principal place of business of the corporation may continue the directors, as trustees, or appoint a receiver or receivers to take charge of the estate, with power to prosecute and defend suits and " to do all other acts which might be done by such corporations, if in being, that may be necessary for the final settlement of the unfinished business of the corporation," and that, " The court shall have jurisdiction of such application and of all questions arising in the proceedings thereon, and may make such orders and decrees and issue such injunctions therein as justice and equity shall require." Section 3814 provides that where the trustees are continued or a receiver is appointed by such court under section 3813, if there be any balance in their hands after paying all allowances, expenses, costs and debts, they shall distribute the funds among the corporation's stockholders as their respective interests may appear.

On application of one of the corporation's stockholders, the Circuit Court of York County on April 1, 1924, entered an order continuing the surviving trustees for a period of at least two years with full power, among other things, to sell and convey by deed or otherwise all the corporation's property " on such terms as in their judgment may be deemed advisable," and after paying all debts to distribute any balance among the stockholders entitled thereto.

There is nothing in the State statute or the court's order making the sale in any way subject to the approval of the court. And it appears that such was the understanding of the trustees, for they conveyed the property, accepted stock of the buyer in lieu of cash, and made a final distribution to the stockholders without first obtaining the consent of the court. The fee to the trustees had been agreed on in 1924 and was never in dispute, and as far as this particular petitioner is concerned he was one of the trustees and was a party to and a beneficiary of the fee arrangement.

Courts of equity will not interfere with the settlement of the affairs of dissolved corporations by trustees acting under State statutes prescribing their duties and powers, except upon a showing that the trustees are incompetent, unfaithful, or mismanaging the property to the injury of the complainant, or that there is dissension among the trustees. *Weatherly* v. *Capital City Water Co.*, 115 Ala. 172; 22 So. 140; *Rossi* v. *Caire*, 174 Cal. 74; 161 Pac. 1161; *Stewart* v. *Pierce*, 116 Iowa, 733; 89 N. W. 234; *New Foundland Railway Construction Co.* v. *Schack*, 40 N. J. E. 222; 1 Atl. 23; Fletcher Cyclopedia Corporations § 5644.

It is not being contended, and it does not appear from any of the evidence before us, that during 1925 or at any time prior thereto,

there existed conditions which the court would have recognized to the extent of denying to the trustees the exclusive right they had under the statute and the court's order to fully wind up the corporation's affairs. So far as the record discloses, the trustees were liquidating the affairs of the corporation in a manner entirely satisfactory to all parties in interest. It was not until October 28, 1926, when the court granted the trustees further time within which to close up the business, that the trustees were directed by the court to render a final report of their proceedings. This was done, and the next day the court confirmed the report, which included the sum of $25,000 to be paid the trustees as compensation for their services. Trustees liquidating dissolved corporations are entitled to a reasonable fee for their services. *Lindemann* v. *Rusk*, 125 Wis. 210; 104 N. W. 119; *Fratessa* v. *Morrissey* (Cal.), 178 Pac. 303. This claim of the trustees, like demands of other creditors, does not appear to ever have been in controversy. The fee was fixed in 1924, and the petitioner was then or not later than 1925, in a position to determine the amount he would receive on his stock investment.

We think the facts justify respondent's action in refusing to allow the alleged loss as a deduction in 1926, and so hold. *Royal Packing Co.* v. *Commissioner*, 22 Fed. (2d) 538; *F. W. Darling* v. *Commissioner*, 49 Fed. (2d) 111.

The parties have filed a stipulation to the effect that if the loss be held to have been sustained in 1926, then petitioner's gross income should be increased by an amount equal to the fair market value of the stock in the Yorktown Hotel Corporation received by petitioner as compensation for his services as a liquidating trustee. In view of the conclusion reached by us, this stipulation plays no part in the determination of the deficiency. Nor is it necessary in our view of the matter to discuss the question of whether or not the transaction between the Jamestown Portland Cement Company and the Yorktown Hotel Corporation constituted a reorganization within the meaning of the revenue act.

*Decision will be entered for the respondent.*