JOHNSON COUNTY, Iowa, Appellee,

v.

GUERNSEY ASSOCIATION OF JOHNSON COUNTY, IOWA, INC., Appellant.

No. 2–56796.

Supreme Court of Iowa.

July 31, 1975.

Rehearing Denied Sept. 27, 1975.

Honohan, Epley & Lyon, Iowa City, for appellant.

J. Patrick White, Asst. County Atty., for appellee.

Heard by MOORE, C. J., and MASON, RAWLINGS, LeGRAND and McCORMICK, JJ.

MOORE, Chief Justice.

Defendant Guernsey Association of Johnson County, Iowa, Inc., appeals from trial court's order enjoining it from selling un-

pasteurized milk to any final consumer, including its own members.

Plaintiff Johnson County on March 31, 1972 filed its petition asking that defendant be permanently enjoined and restrained from distributing non-pasteurized milk for human consumption, in violation of Code chapter 192. Defendant's answer denied selling unpasteurized milk to the final consumer as prohibited by Code section 192.11, alleging it distributed milk only to its members.

On trial to the court, August 8, 1973, most of the evidence was stipulated. Little, if any, factual dispute is involved in this appeal. Defendant is a non-profit corporation organized by Eldon and C. E. Moss under the Iowa Non-Profit Corporation Act, Chapter 504A of the 1973 Code of Iowa. One of defendant's stated purposes is to provide a source of milk from Golden Guernsey cows for its members. The corporation by its officers and directors entered into an agreement with Eldon and C. E. Moss to lease from them their herd of Guernsey cattle. It included a provision all milk produced by the cows would be the property of the corporation. Eldon Moss entered into an agreement for the care of the leased herd.

To pay the cost of leasing and care of the herd each member was assessed a fee based on his consumption of the corporation's dairy products. Unpasteurized milk was distributed at the corporation's milk house. Pursuant to the corporate by-laws milk was not available to nonmembers. Members deposited $.87 for each gallon taken, making their own change from the corporation's funds at the milk house. Milk not distributed to members was sold to dairies.

To become a member of the corporation one had to pay a $1.00 membership fee and have an understanding of the objects and purposes of the corporation. There were about 450 members of the corporation at trial time. Five members testified they joined the corporation because they believed unpasteurized milk to be superior to pasteurized milk.

The corporation's milk was regularly tested by both the operator Eldon Moss and a professional testing service recognized by the State of Iowa. Tests revealed the milk produced by the corporation was maintained at a standard maximum bacterial count of 50,000 per milliliter. For delivery to dairies the state requirement is a maximum bacterial count of 100,000 per milliliter. Code section 192.19. Thus the corporation's milk betters the bacterial requirements for milk delivered to dairies. However, the corporation's milk fails to meet the State's 20,000 per milliliter bacterial limit for Grade "A" pasteurized milk. Code section 192.19.

The trial court found defendant's distribution of unpasteurized milk to its members constituted a sale prohibited by section 192.-11. The court cited Code section 192A.1(9); Code section 422.42(2) and section 554.2106 of the Uniform Commercial Code, Code 1973. The court enjoined defendant from further such sales as authorized by section 192.32.

Defendant-appellant states the issue on this appeal as: "Does the distribution of unpasteurized milk by defendant to its members constitute a sale prohibited by section 192.11 of the Code of Iowa."

Code section 192.11 in pertinent part provides:

"Only grade 'A' pasteurized milk and milk products shall be sold to the final consumer, * * *."

Code section 192.32 provides:

"Any person who shall violate any of the provisions of chapters 190, 191 and 192 may be enjoined from continuing such violations. Each day upon which such a violation occurs shall constitute a separate violation."

As part of the chapter dealing with marketing of dairy products this definition is set out; " 'Sale' or 'sell' means and includes any commercial transfer for consideration, exchange, barter, gift, or offer for sale and

distribution in any manner or by any means." Section 192A.1(9).

Practically the same definition is found in Code section 422.42(2) in reference to sales tax and in Code section 554.2106(1), a part of the Uniform Commercial Code. A similar definition of "sale" is approved in *Baird v. City of Webster City*, 256 Iowa 1097, 1109, 130 N.W.2d 432, 439.

■ I. Defendant-appellant first argues a sale did not take place as title to the milk was at all times in the members of the corporation. Its first hurdle is this provision in its lease of the Moss cattle: "7. All milk produced by the original cows, replacements therefor, supplied by the Lessor, and the progeny of either during the term of this Lease shall belong to the Lessee."

■ Next defendant is confronted with the prevailing view that the corporation, not the members or shareholders, holds title to corporate property.

In *Dawson v. National L. Ins. Co.*, 176 Iowa 362, 378, 157 N.W. 929, 934, we quote the following from 3 Pomeroy, Equity Jurisdiction (3d Ed.) section 1090:

"* * * The doctrines are fundamental and familiar that the corporation itself is a legal personality, and holds the full title, legal and equitable, to all corporate property. Stockholders, individually and separately, hold the full title, legal and equitable, to their respective shares of stock. A stockholder does not, by virtue of his stock, acquire any estate, legal or equitable, in the corporate property; he obtains only a right to participate in the lawful dividends while the corporation is in being, and to his proportionate share of the net assets upon its dissolution and final settlement. * * *."

In *Liken v. Shaffer*, 64 F.Supp. 432, 438 (N.D.Iowa 1947) Judge Graven wrote:

"* * * It is well settled that the property of a corporation is not the property of the individual stockholders. *Stewart v. Pierce*, 1902, 116 Iowa 733, 89 N.W. 234. On page 240 of the North-

western citation in that case, the Iowa Supreme Court states: 'The property of a corporation is also entirely distinct from the property in the shares of stock issued by it, and the stockholders are not the owners of its property as individuals.' In the case of *Klein v. Board of Tax Supervisors*, 1930, 282 U.S. 19, on page 24, 51 S.Ct. 15, on page 16, 75 L.Ed. 140, 73 A.L.R. 679, Justice Holmes succinctly states: 'But it leads nowhere to call a corporation a fiction. If it is a fiction it is a fiction created by law with the intent that it should be acted on as if true. The corporation is a person and its ownership is a nonconductor that makes it impossible to attribute an interest in its property to its members.' "

The general rule is also stated in 18 C.J.S. Corporations § 512 and 18 Am.Jur.2d, Corporations, section 486.

The corporation's distribution of milk to its members was a transfer of title to property for a fixed price. A contrary holding could be reached only by "piercing the corporate veil." The record discloses no compelling reason for doing so.

II. Defendant-appellant's second argument is that Code section 192.11 was not intended to prohibit the distribution of milk involved in this case. It points out it is a *bona fide* corporation whose members are genuinely interested in obtaining unpasteurized milk because they believe it is healthier and more wholesome than pasteurized milk. Defendant then argues section 192.11 was designed to prohibit sales to the general public and that the corporation distributes milk to its members, not the public. Like the trial court, we do not agree.

Assuming arguendo statutory construction of section 192.11 is necessary the following from *Iowa Nat. Indus. Loan Co. v. Iowa State, Etc.*, Iowa, 224 N.W.2d 437, 439, 440, is relevant here:

"In the countless cases this court has considered over the years, many rules of statutory construction have evolved.

With one exception none of them is to be used to the exclusion of the others and all must be applied together in the light of the particular facts of the case then under examination. The single departure from this relates to the polestar of all statutory construction—the search for the true intention of the legislature. The other interpretative guides are all designed, in one way or another, to help us reach that goal. Among the cases emphasizing this primary rule are [Citations].

"Our previous holdings also establish the following general guidelines:

"(1) In considering legislative enactments we should avoid strained, impractical or absurd results. [Citations].

"(2) Ordinarily, the usual and ordinary meaning is to be given the language used but the manifest intent of the legislature will prevail over the literal import of the words used. [Citations].

"(3) Where language is clear and plain, there is no room for construction. [Citations].

"(4) We should look to the object to be accomplished and the evils and mischiefs sought to be remedied in reaching a reasonable or liberal construction which will best effect its purpose rather than one which will defeat it. [Citations].

"(5) All parts of the enactment should be considered together and undue importance should not be given to any single or isolated portion. [Citations].

"(6) * * *.

"(7) * * *."

Additionally it must be noted that a law providing regulations conducive to the public good and welfare, is ordinarily remedial, and as such liberally interpreted. *State ex. rel. Turner v. Koscot Interplanetary, Inc.*, Iowa, 191 N.W.2d 624, 629, and citations. See also 3, Sutherland, Statutory Construction (4th Ed.) section 71.01; 73 Am.Jur.2d, Statutes, section 281 and 82 C.J.S. Statutes § 388.

Section 192.11 is a statute enacted to protect public health, and as such must be construed liberally to effect its purpose. The statute prohibits sales of unpasteurized milk to the "final consumer." The members of the corporation were final consumers within the meaning of section 192.11. The trial court properly issued the injunction to prevent further sales of unpasteurized milk to them.

Affirmed.