LINDEMANN, Appellant, vs. RUSK and others, Respondents, and LINDEMANN and others, Appellants.
LINDEMANN, Respondent, vs. RUSK and others, Appellants, and LINDEMANN and others, Respondents.

*April 6—June 23, 1905.*

*Executors and administrators: Duration of office: Corporations: Winding up: Misconduct of directors: Cause of action: Survival of actions: Jurisdiction of county and circuit courts: Claims against decedents: Appeal: Findings, when disturbed: Abatement of actions: Escheats: Good will as an asset: Conversion: Profits: Accounting: Res adjudicata: Trial: Refusal to make specific findings: Loans to directors of corporation: Compensation.*

1. Sec. 3850, Stats. 1898, relating to the settlement of estates, provides that, on application of an executor or administrator for further time to settle an estate, "the court may, in its discretion, grant such further time for the payment of debts and legacies and the settlement of the estate as the nature of the case may require, and may extend the time upon like petition and notice; but in no case shall the time be extended beyond six years from the time of granting letters testamentary or of administration." More than six years after the issue to them of letters testamentary, executors were, by order of the circuit court in which an action was pending involving the estate of their testator, per-

Lindemann v. Rusk, 125 Wis. 210.

mitted to become parties to that action and file a cross-bill praying affirmative relief. The estate of this testator had not been finally settled, and no order extending the time for the settlement had been made in the county court wherein the proceedings were pending. *Held*, that no error was committed, since the statute (sec. 3850) does not limit the functions of the executors after the six-year period, but such functions continue until final settlement or the executors are otherwise discharged.

2. Where the term of existence of a corporation has expired by limitation, the relationship of its then directors is that of trustees under the powers given by sec. 1764, Stats. 1898, and any misconduct in their administration of its affairs—such as wrongfully appropriating its good will—is misconduct in their fiduciary capacity.

3. The liability for such misconduct is not a mere claim of damages for a tort, but one for injury to personal estate, which survives under sec. 4253, Stats. 1898, and may be enforced in an action for an accounting in equity against the personal representatives of the delinquent directors.

4. Although the ordinary jurisdiction of courts of equity over administrators has been taken away and conferred upon probate courts, or has become obsolete, yet there still remains an auxiliary or supplemental jurisdiction, to be exercised in exceptional cases, where the jurisdiction of the probate courts is confessedly inadequate or has been found insufficient; and the jurisdiction over estates, interests, and primary rights purely equitable, and to administer equitable remedies, is nowhere lost merely because the interest, right, or remedy grows out of or is connected with the estate of a deceased person which is in the course of administration, even though the administration proper, the accounting, and final settlement are carried on under the exclusive jurisdiction of another tribunal.

5. Such jurisdiction is recognized by ch. 5, Laws of 1899, amending sec. 3845, Stats. 1898, which designates specifically what actions may be prosecuted against executors and administrators, and then adds: "And other actions in which the county court cannot afford a remedy as adequate, complete, prompt, or efficient as the circuit court."

6. In such case, where the circuit court has determined that an exceptional case of that nature is presented and has taken jurisdiction, unless clearly erroneous its decision will not be disturbed.

7. Where, in a suit by the personal representatives of a deceased director to wind up the affairs of a corporation, a cross-bill was

filed by the representatives of a deceased stockholder against such personal representatives to recover, as an asset of the corporation, a sum alleged to be due from the deceased director for wrongfully appropriating the good will of the corporation, the circuit court is *held* to have properly taken and retained jurisdiction. It is not necessary that the claim should have been first presented to and passed upon by the county court, or that the claim be prosecuted by the receiver appointed in the winding-up action.

8. Under sec. 1764, Stats. 1898, giving the surviving director of a corporation the right to take possession of the corporate property at the expiration of the life of the corporation for its administration and final distribution, the surviving director acts as trustee for those interested either as creditors or stockholders, and any wrongful act by such director through which the corpus of the estate is impaired is a direct injury to the beneficial owners, is germane to the principal cause of action in a suit to wind up the affairs of the corporation, and properly enforceable as a part of such proceeding.

9. Under sec. 1764, Stats. 1898, extending the life of a corporation for three years after the termination of its charter existence for the purpose of final liquidation of its affairs through its directors as its legal administrators, a suit in equity to wind up its affairs may be maintained and prosecuted to judgment after the expiration of the three-year period in the name and right of the parties interested in the corporate estate.

10. It is not the law of this state that, on the dissolution of a banking or moneyed corporation, debts due it or owing by it are extinguished, and that its personal property then undisposed of escheats to the state and its real estate reverts to its grantors or donors.

11. A banking corporation may have a good will, which, when acquired, constitutes property.

12. Good will is the result of an employment of capital in some established business. It augments its value, is an incident to the conduct of the enterprise, and exists at the place where the business is carried on.

13. A banking corporation, which dissolved by virtue of the time limit for its existence, had a well established business, which under the statutes was continued for three years from the time it ceased to conduct a going banking business, for the purpose and with power, by its directors and managers, to settle up and liquidate its affairs. Nothing prevented such officers from transferring to another banking corporation the right to use its name as its successor in business by purchase of its tangible

assets and good will and the right to hold itself out to the world as successor to the old bank. The surviving director of the old bank organized a new one under the old name, conducted its business in the offices where the affairs of the old were being liquidated and settled, secured for the new bank the customers of the old, and practically dealt with the affairs of the old bank as its successor, and thus acquired the benefits of the good will of the old bank. *Held*, that the old bank was possessed of a good will at the time the surviving director took possession of its assets, and, as trustee of the old bank's property, with power to liquidate its affairs, it was the duty of the surviving director to dispose of such good·will, with the tangible assets of the bank, in the most advantageous manner; and his appropriation thereof for the benefit of the new bank was properly treated as a sale, valid or voidable at the option of the stockholders for whom he was trustee.

14. In such case the beneficiaries could require the new bank to account for the profits realized by it through the wrong of its organizers and owners in appropriating the good will of the old bank.

15. In order to furnish a basis for applying the rule of *res adjudicata* there must· not only be identity of parties and subject matter, but also an identity of causes of action.

16. The facts alleged and relief asked in two actions, in one to enjoin the use of the good will of a bank in process of liquidation and the appointment of a receiver, and in the other—by way of cross-bill in an action brought to wind up the affairs of the bank—to recover damages for an alleged conversion of its good will, stated in the opinion, are *held* not to present identical causes of action, and hence that the rule of *res adjudicata* did not apply.

17. Where all the material facts involved in a cause are sufficiently covered by the findings, it is not error to refuse requests for specific findings.

18. The surviving director of a bank in process of liquidation borrowed from such bank, giving his notes, which, with interest, were paid. The proceeds of such loan were used to pay for stock in a new bank, organized with the same name, and to which such director transferred the good will of the old bank without any compensation. At the time the director obtained the loan he was a half owner in the old bank, and his interests in its·assets exceeded the loan obtained by him. *Held*, that the transaction was a loan, and it was not error to refuse to treat the sum so borrowed as a trust fund in his hands, and its investment in the new bank as one made for the benefit of those interested in the funds of the old bank, so that the stock purchased with it

should be apportioned *pro rata* among the owners of the old bank.

19. Where a director of a bank in process of liquidation rendered services incident to settling the greater portion of its affairs, it is not error to allow him compensation for his services at the same rate he had been paid by salary as an officer before the bank ceased doing business.

APPEALS from a judgment of the circuit court for La Crosse county: J. J. FRUIT, Circuit Judge. *Affirmed on both appeals.*

This is a creditors' action to wind up the affairs of the Bank of Viroqua, a corporation. The Bank of Viroqua was organized by Jeremiah M. Rusk and William F. Lindemann on December 13, 1890, under articles of incorporation which were recorded December 30, 1890, in the office of the register of deeds for Vernon county. By these articles Rusk and Lindemann associated themselves to establish and conduct an office of discount and deposit under the terms and provisions of "An act to authorize the business of banking," approved April 19, 1852, and the amendments thereto. As such corporation under the name of the Bank of Viroqua they conducted such a business at Viroqua, Wisconsin. The period of existence of this corporation, as provided in the articles of organization, was from January 5, 1891, to January 4, 1901, and the bank was actually engaged in business during this period. The capital stock of this bank was $50,000, divided into 100 shares of $500 each, of which the incorporators, Rusk and Lindemann, each owned one half. They each so owned and held such stock up to the time of their deaths. At no time during the existence of the bank did they pay in more than fifty per centum of the capital stock. From the time this bank entered upon its business to January 4, 1901, William F. Lindemann was an officer thereof, and was in the active management of the bank's affairs. Both the incorporators are now deceased. Jeremiah M. Rusk died testate November 21, 1893, and William F. Lindemann died

intestate December 13, 1901. The will of Jeremiah M. Rusk was probated January 2, 1894. He left a widow, *Elizabeth M.*, and four children, *Lycurgus J., Mary E., Blaine D.,* and *Charity Rusk Craig,* who are the legatees under his will. On January 15, 1902, special letters of administration were issued by the probate court for Vernon county to *Henry Lindemann* in the administration of the estate of William F. Lindemann, deceased, who left surviving him his widow, *Rebecca,* and the following children: *Henry, William F., Albon,* and *Regina L. Trowbridge.*

After January 4, 1901, when the bank ceased to do a general banking business, William F. Lindemann, as surviving director, took charge and management of its affairs to settle and close them up. He continued in this capacity to the time of his death, and at that time had closed and adjusted the greater part of its business and affairs. At his death the unliquidated and unsettled accounts of the bank needed administration, and plaintiff, as a creditor of the bank, on his own behalf as a creditor and in behalf of all others similarly situated, commenced this suit to close and finally wind up this banking business and to conserve and enforce his rights as heir at law of William F. Lindemann under the ownership and rights held by William F. Lindemann in his lifetime to any of the property of the bank. All the legatees under the will of Jeremiah M. Rusk, deceased, and all the heirs at law and the widow of William F. Lindemann, deceased, and the Bank of Viroqua were made parties defendant; and plaintiff prayed that the affairs of this bank be wound up under the court's direction, and that for that purpose *Henry Lindemann* be appointed receiver, with full powers, and that, after a full and complete administration of the bank's affairs, he make distribution of the property in his hands to those entitled thereto. On February 6, 1902, the court, by order, made *Lycurgus J.,* as executor, and *Mary E. Rusk,* as executrix, of the will of Jeremiah M. Rusk, deceased, and *Henry Linde-*

*mann, Albon,* and *William F. Lindemann, Jr.,* as adminis-
trators of the estate of William F. Lindemann, deceased, par-
ties defendant, with the privilege of answering in the case.
On the same day Fred Eckhart was appointed receiver in the
action, and on February 17, 1902, he filed his bond. On Feb-
ruary 17, 1902, upon petition of *Lycurgus J. Rusk,* as exec-
utor, and *Mary E. Rusk,* as executrix, which petition bears
date February 6, 1902, the court by order granted them leave
to serve and file a cross-bill against their codefendants, the
administrators of the estate of William F. Lindemann, de-
ceased, and permitted them to allege such facts as they might
be advised constituted a cause of action in their favor as rep-
resentatives of the estate of Jeremiah M. Rusk, deceased, and
for the benefit of the Bank of Viroqua, its stockholders and
creditors, and against the representatives of the Lindemann
estate, for an accounting by the Lindemann estate of the
proceedings and conduct of William F. Lindemann as the
trustee of the bank, in the management and settlement of its
affairs, and for the recovery of whatever sum might be found
due from them as such administrators, or from the estate they
represented, on account of the appropriation by William F.
Lindemann of the good will of the business of the Bank of
Viroqua, and of any of its assets, or on account of any other
default in the discharge of the decedent's duty as such trustee
of the bank. Pursuant to this order, *Lycurgus J.* and *Mary E.
Rusk,* as the representatives of their father's estate, served a
cross-bill, alleging that William F. Lindemann, in the month
of December, 1900, organized a new bank under the name of
the Bank of Viroqua, and that he subscribed for the greater
part of the capital stock and that his children subscribed for
the remainder; that this new bank opened and started doing
business on the morning following the day on which the old
Bank of Viroqua ceased conducting its business as a going
concern under its articles of incorporation; and that the Lin-
demanns, as officers of the new bank, took possession of the

banking house wherein the old bank was located, used the same furniture and bank books, and dealt with the patrons of the old bank as though there had been no interruption in the conduct of the old bank's business and in their relation thereto. It is also alleged that the old Bank of Viroqua had acquired a good will, and that it and other valuable assets had been appropriated by William F. Lindemann. They prayed for an accounting of these assets, and that the court decree that the avails and the profits which had accrued to the Lindemann estate from the appropriation of these assets be recovered against it and paid to the receiver in this action, and that he distribute them among the proprietors of the old bank under the orders of the court. The administrators of the Lindemann estate demurred to this cross-bill upon several grounds and the demurrer was overruled. They thereupon served an answer to the bill, and, among other things pleaded, they denied the existence and possession of a good will by the bank, and they denied that any of the bank's assets had been diverted and appropriated as alleged. The case went to trial upon the issues framed by the cross-bill and the answer thereto.

Upon the testimony the court found the facts of the transaction, as to their history and relation, substantially as above stated, and as to the question of a good will, and a misappropriation thereof and of other assets by Lindemann, as follows:

"(11) That prior to the expiration of the charter of said banking corporation, and on or about the 8th day of December, 1900, the said William F. Lindemann, without notice to the legal representatives, heirs, or widow of the said Jeremiah M. Rusk, deceased, of any intention so to do, caused to be incorporated and organized, under the banking laws of the state of Wisconsin, a new banking incorporation under the same name of said old banking corporation, to wit, Bank of Viroqua, with a capital stock of $50,000, and that in and by the certificate of incorporation of said new bank the business thereof was to begin on the 5th day of January, 1901, and

that said new bank was so caused to be incorporated by the said William F. Lindemann without affording to the defendants *Rusk,* either individually or in their representative capacities, any opportunity to participate in the incorporation or organization or subscription to the stock of the said new bank, and with the purpose on the part of said William F. Lindemann of appropriating to himself and to members of his family the good name and the good will of the said former Bank of Viroqua without payment therefor."

"(13)  That said new bank began its banking business on the morning of the 5th day of January, 1901, under the said name, Bank of Viroqua, in the same banking office and building in which the former bank had conducted its banking business, and that the said William F. Lindemann, up to the time of his death, was the president and general managing officer of the said new bank; that, acting as legal administrator of said former bank, the said William F. Lindemann proceeded to close up the business of said former bank by collecting in the debts due it and by liquidating its obligations, the business of so closing up said former bank being conducted in the same office and building in which the said William F. Lindemann was conducting said new bank; that when customers of the old bank came to the bank to do business they were informed that the old bank did not have power to do any further business, and were informed that, if they desired to do so, their business could be transferred to the new bank, which was generally done, and that he thus secured to said new bank most of the deposits of said old bank, and that at no time did he make any effort to dispose of the assets of said old bank other than by the collection thereof as the same matured; and that he at no time made any effort to so dispose of said assets so as to realize anything from the good will or good name of said Bank of Viroqua, but, on the contrary, the said William F. Lindemann, as such legal administrator of said old bank, so managed its affairs as to appropriate to the said new bank the good will and the good name of said former bank, without accounting to the estate of the said Jeremiah M. Rusk or to his personal representatives or to his widow or heirs therefor."

"(15)  That at the time of the trial of this action, to wit, the 12th day of July, 1904, the stock of the said new bank

was of the reasonable value of $200 per share, or double its par value.

"(16) That, in addition to the said $30,000 of cash paid in upon the organization of said new bank, there was appropriated and used the said good will of said former bank, of the reasonable value of $16,000, as aforesaid, making the total actual commencing capital of said new bank the sum of $46,000, and that of said sum the said former Bank of Viroqua contributed the said good will, of the value of $16,000, or eight twenty-thirds of the total commencing capital, and that one half of said eight twenty-thirds, or four twenty-thirds, of such capital belonged to and was the property of the defendants, the personal representatives of the estate of the said Jeremiah Rusk, deceased, and that said personal representatives became entitled to share in the same proportion in the profits earned by said new bank, and that four twenty-thirds of the actual value, to wit, $100,000, of the stock of said new bank, at the time of the trial, was and is the sum of $17,391.30.

"(17) That on or about the 4th day of January, 1901, the said William F. Lindemann borrowed from the funds of the said old Bank of Viroqua the sum of $18,000, giving his promissory notes payable to said old Bank of Viroqua therefor, and that he used said sum of $18,000 so borrowed in paying for the stock in the said new Bank of Viroqua so issued to him, as hereinbefore found, and that the notes so given by him to represent the $18,000 so borrowed were secured by collateral; that after the giving of said notes the said William F. Lindemann paid to himself, as legal administrator of said old bank, the amount of said notes and interest; and that such amount, with interest thereon, has been accounted for herein, and was a part of the funds in the hands of the receiver which were distributed between the respective interests in this action under an order of this court."

"(20) That the reasonable value of the services of said William F. Lindemann, as the legal administrator of said bank, from the time of the expiration of its charter up to the time of his death, is the sum of $938.89."

It appears that, shortly after the time limited by the charter of the old bank for doing a banking business, *Lycurgus J.*

and *Mary E. Rusk,* as the personal representatives under their father's will, commenced an action in equity in the Vernon county circuit court against the incorporators and stockholders of the new bank, and asked for the appointment of a receiver to wind up the affairs of the old bank; and they prayed that the defendants be enjoined from doing a banking business in the name of Bank of Viroqua in the rooms of the old bank, and that William F. Lindemann be enjoined from conducting and winding up the affairs of the old bank. The defendants demurred to the complaint in this action upon the grounds that it appeared upon its face (1) that the plaintiffs have not legal capacity to sue; (2) that there was a defect of parties, in that the old and the new bank corporations were not parties to the action; (3) that several causes of action were improperly united; and (4) that the complaint does not state facts sufficient to constitute a cause of action. The demurrer was sustained as to the second, third, and fourth grounds and overruled as to the first. No amended complaint having been served, the court on June 11, 1901, entered judgment against the plaintiffs dismissing the complaint and for costs. The trial court in the instant case has held that this judgment was not a bar to the maintenance of the present action, and has awarded judgment to the effect that the personal representatives of the estate of Jeremiah M. Rusk, deceased, were entitled to recover the sum of $17,391.30 against the administrators of the estate of William F. Lindemann, deceased, or against them personally; this sum, specified in finding No. 16, to be collected out of the assets of his estate in their hands, if sufficient, and, if not sufficient, the judgment to be against them personally. It was also adjudged that the administrators of the Lindemann estate recover $938.89, the value of the services of William F. Lindemann as surviving stockholder in administering the old bank's affairs from January 5, 1901, to the date of his death, December 13, 1901. The receiver's account was also

approved and judgment of distribution entered. From this judgment the representatives, legatees, and heirs of both Jeremiah M. Rusk and William F. Lindemann have appealed.

*C. W. Graves* and *E. C. Higbee,* for the *Lindemanns.* They contended, *inter alia,* that a defunct corporation has no good will; that good will is the right to carry on the old business and to represent that it is the old business that is carried on, is merely an incident of other property, and, as a general rule, is not an incident of a stock of merchandise but of locality, of the store room, or place of business. *Wedderburn v. Wedderburn,* 22 Beav. 84–104; *Rawson v. Pratt,* 91 Ind. 9; *Vonderbank v. Schmidt,* 44 La. Ann. 264, 15 L. R. A. 462; *Merchants' Ad-Sign Co. v. Sterling,* 124 Cal. 429, 71 Am. St. Rep. 94; Hopkins, Unfair Trade, 132; *Glenn & Hall Mfg. Co. v. Hall,* 61 N. Y. 226; *Bell v. Ellis,* 33 Cal. 620, 624; *Smith v. Gibbs,* 44 N. H. 335, 343; *Slack v. Suddoth,* 102 Tenn. 375; *Myers v. Kalamazoo B. Co.* 54 Mich. 215; *Washburn v. Dosch,* 68 Wis. 436; *Macdonald v. Trojan B. F. Co.* 29 N. Y. St. Rep. 867. The question of appropriation of the good will of a business or trade is analogous to the appropriation of a trade name, and the question as to the right to use a certain trade name usually arises upon an application of one corporation or firm against another to enjoin the use of such trade name. The ground upon which the courts interfere is that it tends to create confusion and enables the second corporation to obtain, by reason of the similarity of names, the business of the first one. *C. S. Higgins Co. v. Higgins S. Co.* 144 N. Y. 462; *Holmes, B. & H. v. Holmes, B. & A. Mfg. Co.* 37 Conn. 278, 295. But when the second corporation gains no business by the use of such name which the first might lawfully do, the reason entirely fails; and where no injury has resulted or is likely to result, the courts will not interfere, and the use of a particular name by any corporation will not be enjoined, unless it be clearly proven that the complainant will suffer

injury. *Newby v. Oregon Cent. R. Co.* Deady, 609; *Hygeia Water Ice Co. v. N. Y. Hygeia Ice Co.* 140 N. Y. 94; *Richardson & B. Co. v. Richardson & M. Co.* 55 Hun, 606, 27 N. Y. St. Rep. 808; *Boston R. Shoe Co. v. Boston R. Co.* 149 Mass. 436; *Elgin B. Co. v. Elgin C. Co.* 155 Ill. 127; *Neb. L. & T. Co. v. Nine,* 27 Neb. 507, 43 N. W. 348; *Drummond T. Co. v. Randle,* 114 Ill. 412; *Koehler v. Sanders,* 122 N. Y. 65; *Colonial Dames v. Colonial Dames,* 60 N. Y. Supp. 302. It is an elementary proposition in connection with the definition of good will that it cannot exist apart, or be sold apart, from the business with which it is ·connected. While it is not necessarily local it is usually, to a great extent, and must of necessity be incident to a place, ·an established business, or a name known to the trade. *People ex rel. A. J. Johnson Co. v. Roberts,* 159 N. Y. 70–83; *Millspaugh Laundry v. First Nat. Bank,* 120 Iowa, 1, 94 N. W. 262; *Washburn v. Nat. Wall-Paper Co.* 81 Fed. 17; *Metropolitan Bank v. St. Louis D. Co.* 149 U. S. 436; *Palmer v. Toms,* 97 Wis. 367; *Knoedler v. Glaenzer,* 55 Fed. 895; *Musselman's Appeal,* 62 Pa. St. 81, 1 Am. Rep. 382; *Rowell v. Rowell,* 122 Wis. 1, 99 N. W. 473; *In re Lindsay Estate* (Pa.) 59 Atl. 1074–1076; *Barber v. Conn. Mut. Life Ins. Co.* 15 Fed. 312, 313; *Sheldon v. Houghton,* 5 Blatch. 285. A banking corporation, business, or partnership cannot be considered or treated as a strictly commercial undertaking or business; it is professional, or at least semi-professional. Professional good will differs from commercial good will in that the surviving partner cannot be required to account for it as an asset to the personal representatives of a deceased partner. *Farr v. Pearce,* 3 Madd. 74; *Austin v. Boys,* 2 DeG. & J. 626; *Arundell v. Bell,* 49 L. T. 345; *Spicer v. James,* 2 Myl. & K. 387; *Chappell v. ·Griffith,* 53 L. T. 459; *Slack v. Suddoth,* 102 Tenn. 375, 73 Am. St. Rep. 881; *Douthart v. Logan,* 86 Ill. App. 294.

For the *Rusks* there was a brief by *Olin & Butler,* and

Lindemann v. Rusk, 125 Wis. 210.

oral argument by *H. L. Butler.*   They contended, *inter alia,* that a corporation may have a good will the same as an individual or partnership.   *People ex rel. A. J. Johnson Co. v. Roberts,* 159 N. Y. 70, 83, 85; *People ex rel. Union T. Co. v. Coleman,* 126 N. Y. 433, 437; *People ex rel. Wiebush & H. Co. v. Roberts,* 154 N. Y. 101, 108; *Washburn v. Nat. Wall-Paper Co.* 81 Fed. 17, 20; *Arents v. Blackwell's D. T. Co.* 101 Fed. 338; *Wilmer v. Thomas,* 74 Md. 485, 22 Atl. 403; *Beebe v. Hatfield,* 67 Mo. App. 609; *Rowell v. Rowell,* 122 Wis. 1, 99 N. W. 473.   Dissolution of a corporation is likened to the dissolution of a partnership in respect to the rights of the parties.   *Mason v. Pewabic M. Co.* 133 U. S. 50, 59; *Dousman v. Wis. & L. S. M. & S. Co.* 40 Wis. 418, 421.   Such dissolution does not destroy the good will even though it expires by limitation.   *Rowell v. Rowell,* 122 Wis. 1, 99 N. W. 473, 478; *Bank of Tomah v. Warren,* 94 Wis. 151; *Mitchell v. Read,* 84 N. Y. 556, 564.   Whether good will is of value, and if so what value, is a question of fact. If of value it is an asset of the dissolved corporation and should be disposed of for its benefit, and it is the duty of the surviving trustee, or legal administrator of the partnership or corporation, to so dispose of its property including the good will as to obtain the best possible price therefor, and to account for it if lost or misappropriated.   *Rammelsberg v. Mitchell,* 29 Ohio St. 22; *Mason v. Pewabic M. Co.* 133 U. S. 50, 59; *Rowell v. Rowell,* 122 Wis. 1, 99 N. W. 473, 478; *Mitchell v. Read,* 84 N. Y. 556.   Inasmuch as a gradual liquidation would entirely destroy the good will, it is the right of the stockholders to have the assets sold as an entirety with the good will.   It is proper that the business of the corporation should be continued by a receiver, to the end that the good will may be preserved and realized upon.   *Jackson v. De Forest,* 14 How. Pr. 81; *Dayton v. Wilkes,* 17 How. Pr. 510, 513; *Marten v. Van Schaick,* 4 Paige Ch. 479; *Williams v. Wilson,* 4 Sandf. Ch. 379.   The functions

of the executors of the will of Rusk did not cease at the expiration of six years from the time of granting letters. The limitation of secs. 3849, 3850, Stats. 1898, is not upon the functions of the executors. *Scott v. West,* 63 Wis. 529, 555; *Ford v. Ford,* 88 Wis. 122, 124; *Mackin v. Hobbs,* 116 Wis. 528, 532; *Beniteau v. Dodsley,* 88 Mich. 152, 50 N. W. 110; *Hoffman v. Beard,* 32 Mich. 218; *Buss v. Buss's Estate,* 75 Mich. 163, 42 N. W. 688; *Norman v. Olney,* 64 Mich. 553, 31 N. W. 555; *Card v. Fowler,* 120 Mich. 646, 79 N. W. 925; *Larzelere v. Starkweather,* 38 Mich. 96; *Cooper v. Robinson,* 2 Cush. 184, 191.

SIEBECKER, J. It is argued that the functions of the personal representatives of Jeremiah M. Rusk, deceased, had terminated at the time they were given the right to file the cross-bill in this action, and that they therefore could not prosecute it for the benefit of his estate and of the legatees under his will. It is undisputed that they had been appointed in January, 1894, as executors of his will, more than six years prior to the application and the order permitting them to be made parties in this action; that the estate had not been finally settled; and that no order extending the time for the settlement of the estate had been made by the county court, wherein the proceedings were pending. The claim is that the statutes providing for the payment of debts and legacies and the rendering of an account by an executor or administrator impose a time limit wherein they must act, and that their functions cease at the expiration of such period. The statute (Stats. 1898, sec. 3850) relating to settlements of estates provides that, on application of an executor or administrator for further time to settle the estate, "the court may, in its discretion, grant such further time for the payment of the debts and legacies and the settlement of the estate as the nature of the case may require, and may extend the time upon like petition and notice; but in no case shall

the time be extended beyond six years from the time of grant-
ing letters testamentary or of administration." This pro-
vision declaring that county courts have no power to grant
extensions of time to settle estates beyond six years from the
time of the issuance of letters testamentary or of administra-
tion has been held in *Scott v. West,* 63 Wis. 529, 24 N. W.
161, 25 N. W. 18, and *Ford v. Ford,* 88 Wis. 122, 59 N. W.
464, not to limit the functions of an executor after such pe-
riod, and that, if no final settlement is had before its expira-
tion, he is required thereafter to administer the estate under
the will. As these decisions indicate, it might result in se-
rious injury to persons beneficially interested if an estate
were left without an executor or administrator at any point
of time before its final distribution, and especially when the
nature of his duties under the will and the matters involved
in the settlement of the estate require a longer time. Under
such circumstances the functions of an executor continue un-
til final settlement or until he is otherwise discharged. We
are not fully advised as to the necessity of continuing the
administration of this estate beyond such a time, but we must
presume that valid reasons exist, since no steps have been
taken to compel a termination of the proceedings in county
court. *Mackin v. Hobbs,* 116 Wis. 528, 93 N. W. 462; *Lar-
zelere v. Starkweather,* 38 Mich. 96.

It is contended that the alleged cause of action set out in
the cross-bill for the wrongful appropriation of the good will
by William F. Lindemann, as administrator of the bank's
affairs, does not survive his death, under sec. 4253, Stats.
1898. Assuming for the time that the cross-bill is sufficient
to constitute a cause of action, it is clear that the relationship
of the deceased to the assets of the bank was that of a trus-
tee, under the powers given by sec. 1764, Stats. 1898. He,
in his capacity as such trustee, is charged in this bill with a
wrongful appropriation of the assets. Any misconduct in
his administration of the bank's affairs is misconduct in his

fiduciary capacity, and is primarily an injury to the estate of the corporation, for which a recovery may be enforced in the right of the corporation for the protection of those beneficially interested in the property.    In this aspect the liability is not a mere claim of damages for a tort, but one for an injury to personal estate, which survives under sec. 4253, or it may be enforced in an action for an accounting in equity, subsisting at common law, and enforcible against the personal representatives.    *John V. Farwell Co. v. Wolf,* 96 Wis. 10, 70 N. W. 289, 71 N. W. 109; *Killen v. Barnes,* 106 Wis. 546, 82 N. W. 536; *Somervaill v. McDermott,* 116 Wis. 504, 93 N. W. 553; *Harrigan v. Gilchrist,* 121 Wis. 127, 340, 99 N. W. 909.

It is also claimed that the cross-bill cannot be maintained in this action in the circuit court, since Mr. Lindemann is deceased, and his estate is solvent and in process of administration, and since the time for filing claims against it has not expired; in other words, that the claim on which the action is founded must first be presented to and passed upon by the county court.    The position is taken that the county court has original and exclusive jurisdiction of all claims and demands, of whatever nature, against estates of decedents. This jurisdiction is not as exclusive as here insisted, but is subject to the modification established in *Gianella v. Bigelow,* 96 Wis. 185, 71 N. W. 111, wherein it is said:

"Although the ordinary jurisdiction of courts of equity over administrations has been taken away and conferred on probate courts, or has become obsolete; yet there still remains an auxiliary or supplementary jurisdiction, to be exercised in exceptional cases, where the jurisdiction of the probate courts is confessedly inadequate, or has been found insufficient; and the jurisdiction over estates, interests, and primary rights, purely equitable, and to administer equitable remedies, is nowhere lost merely because the interest, right, or remedy grows out of or is connected with the estate of a deceased person which is in the course of administration,

even though the administration proper, the accounting, and final settlement are carried on under the exclusive jurisdiction of another tribunal."

It must also be remembered that when a circuit court has determined that an exceptional case of this nature is presented, and has taken jurisdiction thereof, unless clearly erroneous its decision will not be disturbed. *Burnham v. Norton,* 100 Wis. 8, 75 N. W. 304. The judicial policy on this subject received legislative approbation by the amendment to sec. 3845, Stats. 1898, by ch. 5, Laws of 1899, which designates specifically what actions may be prosecuted against executors and administrators, and then adds the class, "and other actions in which the county court cannot afford a remedy as adequate, complete, prompt, or efficient as the circuit court." Under the facts presented it is apparent that it was important that, if any liability existed against the estate, all the parties beneficially interested in the recovery, as well as the bank, should be before the court, and that this recovery be enforced in its right, which result could be most effectually and efficiently accomplished in an action for winding up the bank's affairs and for the distribution of its estate among creditors and stockholders.

It is also asserted that the receiver has the right to prosecute this claim against the estate, and that he could have proceeded as effectually in county court as in this action in circuit court. This contention disregards the interests of those beneficially interested in the bank property and their right to participate in the litigation for the enforcement of their interests in the matter. As equitable owners they have the rights of parties in the litigation, and they must not be deprived of the right to prosecute for the protection of those interests. These circumstances clearly bring the case within the exception above mentioned, and the circuit court acted properly in retaining jurisdiction and in directing that the claim be litigated and adjudicated in this action. Among

recent decisions of this court sustaining the ruling of the court the following are cited: *Burnham v. Norton, supra; Meyer v. Garthwaite,* 92 Wis. 571, 66 N. W. 704; *Gager v. Paul,* 111 Wis. 638, 87 N. W. 875; *Becker v. Chester,* 115 Wis. 90, 91 N. W. 87, 650; *Harrigan v. Gilchrist,* 121 Wis. 127, 99 N. W. 909.

Another claim urged upon our attention is that, if any cause of action existed against the Lindemann estate upon the grounds alleged in the cross-bill, it could only be maintained by the receiver of the bank, and it was therefore error to permit the personal representatives under the Rusk will to prosecute it by cross-bill in this action. Under sec. 1764, Mr. Lindemann, as surviving director, had the right to take possession of the bank's property for its administration and final distribution. In this capacity he acted as trustee for those interested either as creditors or stockholders in the property. We then have a trustee and *cestuis que trustent,* the former holding the property subject to the equitable ownership of the latter. Any wrongful act by the one in possession through which the corpus of the estate was impaired was a direct injury to the beneficial owners, and equity recognizes their right to protect their interest and that of the estate if it can be reached by some equitable remedy. Since the trust relation existed between the Rusk executors and Lindemann as the surviving director and administrator of the property, which it is alleged he wrongfully appropriated, the former could, in an appropriate proceeding, enforce an accounting by the latter for the value of the property so wrongfully converted. This liability, being germane to the principal cause of action for the winding up of the bank's affairs, is properly enforcible as a part of such proceeding. It was held in *Gores v. Day,* 99 Wis. 276, 74 N. W. 787:

"Directors are liable to be charged as trustees of property fraudulently misapplied or wasted by them, independent of any statute on the subject, but the duty of enforcing such lia-

bility is in the managing officers of the corporation, though it may be performed by the stockholders or creditors or possibly the assignee or successor of a corporation, when the circumstances are such as to make that necessary, independent of any statute on the subject."

No difference in result is apparent whether the receiver appointed in this action or the Rusk executors, as equitable owners of the property diverted by the trustee, prosecute the claim to compel restitution of the amount converted by the trustee, since the recovery, under either course, is for the benefit of the estate in the court's custody, to be administered by it through the receiver. The object of the proceeding "is to accumulate *in custodia legis,* in the form of money, the assets properly belonging to trust funds, so that an order of distribution may be made." The executors of the Rusk estate had an interest in the bank's property, and were under obligation to enforce every right growing out of it for the conservation of the estate, and to this end the court properly permitted them to prosecute the cross-bill. *Land, L. & L. Co. v. McIntyre,* 100 Wis. 245, 75 N. W. 964; *Cunningham v. Wechselberg,* 106 Wis. 359, 81 N. W. 414; *Michelson v. Pierce,* 107 Wis. 85, 82 N. W. 707; *Harrigan v. Gilchrist,* 121 Wis. 127, 99 N. W. 909.

This action was prosecuted to final judgment after three years from the time the bank ceased to conduct a banking business under its articles of incorporation. It is strenuously insisted that at this time the corporation was extinct for all purposes, and that all actions then pending by or for it in its behalf abated. The claim is made upon the grounds that the power conferred by sec. 1764, Stats. 1898, to extend the corporation for three years to wind up its affairs is exclusive of any other right or remedy for that purpose, and that, under the common-law rule, debts due it or owing by it are extinguished, and that its personal property then undisposed of escheats to the state and its real estate reverts to its

grantors or donors. If these propositions are well founded the legal consequences are certainly weighty and far-reaching, and there should be no uncertainty in their application for the ascertainment of private property rights and of those of the state within their operation. True, there are cases declaring that the dissolution of a corporation is followed by such results, but the trend of modern adjudications on the subject disavows that such were the doctrines of the common law as regards moneyed or commercial corporations. The result of the adjudications seems correctly and well stated by Chancellor KENT. He observes:

"The rule of the common law has in fact become obsolete and odious. It never has been applied to insolvent or dissolved moneyed corporations in England. The sound doctrine now is, as shown by statutes and judicial decisions, that the capital and debts of banking and other moneyed corporations constitute a *trust fund and pledge* for the payment of creditors and stockholders, and a court of equity will lay hold of the fund and see that it be duly collected and applied." 2 Kent, Comm. 307, note.

The reason usually assigned for rejecting the old rule and holding it inapplicable is that the rule had its origin at a time when corporations dealt almost exclusively with municipal, ecclesiastical, and eleemosynary affairs, and when the modern business corporation was unknown, and that the growth of these moneyed corporations necessitated the application of principles which would protect the private property interests of persons dealing with them under the changed conditions. To this end the rights and interests in and to the property of business corporations are, in their essentials and nature, considered to be like those pertaining to partnership organizations; and when such corporation dissolves and thereby loses legal capacity to preserve its estate, a court of equity will, if necessary, lay hold of its assets to compel a final liquidation of its affairs and a distribution of the capital among the stockholders as in partnership associations.

As stated in *Coleman v. White,* 14 Wis. 700, on the subject of banking corporations:

"The stockholders stand on substantially the same footing as though they were partners of an incorporated association, save only the responsibility of each is limited to a sum equal to his share or shares of stock . . . and their liability more nearly resembles that of copartners than any other with which it can be compared." *Mason v. Pewabic M. Co.* 133 U. S. 50, 10 Sup. Ct. 224; *Bacon v. Robertson,* 18 How. 480; *Bewick v. Alpena H. I. Co.* 39 Mich. 700.

It is argued that the provision of sec. 1764 was intended by the legislature to furnish a remedy under these conditions, and that it therefore is exclusive of any other remedy to liquidate corporate affairs. The contention seems an unwarranted construction of this statute, in view of the requirements for the protection of private rights and interests in its assets. This section, in effect, extends the life of a corporation for three years to accomplish final liquidation of its affairs through its directors, and there is nothing which suggests that the usual equitable remedies should not be resorted to at the expiration of such period, if the directors fail to accomplish this object within that time. The statute prescribes that the directors shall continue to act for the corporation as legal administrators, with full power to settle its affairs, "subject to the power of any court of competent jurisdiction to make in any case a different provision." This provision is indicative of a legislative intent not to limit or abrogate the powers vested in the courts to take in custody corporate property and assets for liquidation of its affairs and distribution of its property. This construction is in accord with the usual practice in the wind-up action under the statutes of the state, and is sustained in principle by those cases.

This action was commenced within the three years immediately following the time to which the articles of incorporation limited the corporation to do a banking business, but

was not prosecuted to final judgment until after this three-year period.  It is urged that the action abated at the expiration of the three-year period.  No reason is advanced for this result except the suggestion above mentioned, that the corporation then became extinct and all interest in the claim to its property was forfeited, and that creditors and owners of the capital stock were remediless in the matter; but, as we have pointed out, such is not the result; nor is there anything in the nature of the suit to prevent its continuance and an adjudication and enforcement of these rights. The action is founded in equity.  All persons interested as owners of the property are before the court, and the proceeding is so framed that the interests of any party to the corporate property can be determined, finally adjusted, and fully protected.  Even should it be held that the bank became extinct as a corporation after the action was commenced and before judgment, this does not necessarily abate the action of the interested persons party thereto, though the corporation, as such, might drop out of the proceeding.  Under these conditions the suit could be continued and prosecuted to judgment in the name and right of the parties interested in the corporate estate, which is in the custody of the court and held as a trust fund to be administered for their benefit.  *Harrigan v. Gilchrist,* 121 Wis. 127, 99 N. W. 909; *Bewick v. Alpena H. I. Co., supra; Franklin Bank v. Cooper,* 36 Me. 179; *Shayne v. Evening Post P. Co.* 168 N. Y. 70, 61 N. E. 115; *Gager v. Paul, supra; Milwaukee M. F. Ins. Co. v. Sentinel Co.* 81 Wis. 207, 51 N. W. 440; *Sleeper v. Goodwin,* 67 Wis. 577, 31 N. W. 335; *Bacon v. Robertson,* 18 How. 480.

The trial court found that, at the time the bank ceased to do a going business under its charter, it "owned and was possessed of a good will, which was of the reasonable value at that time of sixteen thousand dollars," and held that it had been wrongfully appropriated by William F. Lindemann, the

surviving director of the bank, for the benefit of the new Bank of Viroqua, organized by himself and his children, and which conducted a banking business in the offices of, and in immediate succession to, the old bank. That a banking corporation may have a good will, which, when acquired, constitutes a species of property, is abundantly supported by authority. *Bank of Tomah v. Warren,* 94 Wis. 151, 68 N. W. 549; *People ex rel. A. J. Johnson Co. v. Roberts,* 159 N. Y. 70, 53 N. E. 685; *Mitchell v. Read,* 84 N. Y. 556; *Washburn v. Nat. W. P. Co.* 81 Fed. 17, 26 C. C. A. 312; *Wilmer v. Thomas,* 74 Md. 485, 22 Atl. 403. Good will is the result of the employment of capital in some established business. It augments its value and is an incident to the conduct of the enterprise. It exists at the place where the business is carried on, and gives value to the enterprise because of the benefits that are likely to come to a successor and which arise from being connected with its reputation. It is this which gives to the opportunity of securing this connection to continue the public patronage in the same respect a commercial value. It is strenuously insisted that the old Bank of Viroqua could not convey good will, for want of power to transfer a place, a name, or tangible assets to which it could attach. It is true the bank might not be able to transfer particular business rooms or offices, but the good will as to the place is not confined to such limits; and it might well attach to this banking business, if continued at offices or rooms in the city of Viroqua other than those formerly occupied by it. It is said the name "Bank of Viroqua" could not have been transferred by it to be exclusively used by a successor. If the general proposition that a defunct corporation whose affairs are being liquidated and closed up retains no right to the use of a corporate name be granted, yet such is not the situation presented by the facts of this case. We have before us a corporation with an established business, which, under the statutes, was continued for three years from the time it ceased to

conduct a going banking business, for the purpose and with power, by its directors and managers, to settle up and liquidate its affairs. Nothing would prevent such officers from transferring to another banking corporation the right to use its name as its successor in business by purchase of its tangible assets and good will and the right to hold itself out to the world as successor to the old bank. The objection that such a course would necessarily include the selling of the liabilities of the old bank seems entirely unfounded, for it would have been entirely feasible to have paid up and settled all liabilities in connection with the new enterprise with probable advantage and convenience to both. That such a course of business is practicable is abundantly shown. The facts of the case show that the Lindemanns organized a new bank under the old name, conducted its business in the offices where the affairs of the old were being liquidated and settled, and practically dealt with the affairs of the old bank as its successor, and thus acquired the benefits of the good will of the old bank. Under these circumstances we find the trial court's conclusion to the effect that the old bank was possessed of a good will at the time Lindemann took possession of its assets is well supported by the evidence. As trustee of the bank's property, with power to liquidate its affairs, it was Lindemann's duty to dispose of the good will, with the tangible assets of the bank, in the most advantageous manner. He failed to do so, but appropriated it to the use of the new bank organized by himself and children. *Bank of Tomah v. Warren, supra; Rowell v. Rowell,* 122 Wis. 1, 99 N. W. 473; *Slater v. Slater,* 175 N. Y. 143, 67 N. E. 224; *Mellersh v. Keen,* 28 Beav. 453; *Williams v. Wilson,* 4 Sandf. Ch. 379. Under such circumstances the appropriation of the good will for the benefit of the new bank may be treated as a sale, and will be held valid or voidable at the option of the *Rusks* for whom he was fiduciary. *Rowell v. Rowell, supra; Harrigan v. Gilchrist,* 121 Wis. 127, 99 N. W. 909. Under the

rule of these authorities, the beneficiaries may require the·
new bank to account for the profits realized by it through the
wrong of its organizers and owners in appropriating the asset
of the good will of the old bank. The facts proven and found·
by the court sustain the judgment of the trial court in fixing·
the value of the good will and for the recovery of the profits·
realized thereon as capital stock of the new bank.

The record shows that the personal representatives of Jere-
miah M. Rusk, deceased, commenced an action against Will-
iam F. Lindemann, and those associated with him in organ-
izing the new bank, shortly after the old bank ceased to do·
a banking business and the new bank had commenced busi-
ness, in which they charge the facts showing the organization·
of the old bank, its course and amount of business, the termi-·
nation of its banking business under the charter provisions,.
the organization of the new bank by William F. Lindemann·
and his children, the beginning of their business on the day
succeeding the cessation of the business of the old bank, using·
the same name, conducting its business in the same place,
using the furniture and books of the old, and so conducting·
its business as to appropriate the good will of the old bank,
and that Lindemann, as surviving director and administrator·
of the affairs of the old bank, so manipulated its affairs as to
endanger the security of the property of the old and operate·
to the advantage of the new bank, in violation of his duty as
such surviving director, and prayed that he and his associates
be restrained from using the name "Bank of Viroqua" as the·
name of the new bank, and from handling, discharging, col-
lecting, or intermingling the affairs or business of the old
bank with that of the new one, and that a receiver be ap-·
pointed to take charge and possession of the affairs and as-
sets of the old bank as well as the banking offices formerly
occupied by it, and then being used by the new bank for the·
purpose of settling and winding up its affairs. The defend-
ants demurred to this complaint upon the grounds: (1) wan*·

of capacity to sue; (2) failure to make both the new and the old bank parties; (3) improperly uniting several causes of action; and (4) that the facts stated did not constitute a cause of action. The demurrer was overruled as to the first ground and sustained as to the second, third, and fourth grounds. The complaint was not amended, and judgment of dismissal and for costs was entered. Plaintiffs in their complaint then demanded relief as above indicated, upon the facts alleged. No claim was made for, nor did the judgment demanded include, damages for conversion of assets or the misappropriation of the good will of the bank. The scope and purpose of the cause of action alleged were to prevent control of the old bank's assets and property by William F. Lindemann as surviving director, and to place them in the court's custody, for the appointment of a receiver, and to prevent Lindemann and his associates in the new bank from using the name "Bank of Viroqua" and the banking offices of the old bank, its books and furniture, and from conducting its business in such manner as to interfere with and intermingle the customers' accounts of the two banks. The facts alleged were made the basis for equitable relief to restrain Lindemann from administering the affairs of the old bank as its surviving director, and to place them under the control of the court, through a receiver, and to prevent any intermingling of its property and affairs with that of the new organization. The cause of action in this suit seeks to accomplish an entirely different object. It charges misconduct by Lindemann, as trustee, in wrongfully converting the property and the good will of the old bank, and seeks to compel an accounting for the damages clearly occasioned to the equitable owners of the trust fund. While allegations of the diversion of the good will and the use of the bank's name are contained in both complaints, it is obvious that the causes of action alleged in the two suits are different, although arising out of the same subject matter, and that the relief sought to be obtained in the one is clearly

different from, and not included in, the other. It is urged
that under the circumstances the judgment in the former ac-
tion is *res adjudicata* as to the matters involved in the latter,
on the ground that we have identity of subject matter and
identity of parties in the two actions. This contention over-
looks one of the essential elements which, to furnish a basis
for the rule of *res adjudicata,* must be common to both ac-
tions, namely, that there must be not only identity of parties
and of subject matter, but also an identity of causes of action.
As held by this court:

"The rule that a judgment in bar, or as evidence in es-
toppel, is binding not only as to every question actually pre-
sented and considered and upon which the court rested its
decision, but as to every point that might have been presented
and decided in the case, . . . *is strictly accurate* when ap-
plied to the cause of action in which the adjudication occurs,
whether in the same or in some other case, but not when the
same question is subsequently raised between the same par-
ties on a different claim or cause of action. In the latter sit-
uation, the former judgment is binding only as to the mat-
ters actually presented and litigated in the former case."
*Wentworth v. Racine Co.* 99 Wis. 26, 74 N. W. 551; *Grunert
v. Spalding,* 104 Wis. 193, 80 N. W. 589; *Hart v. Moulton,*
104 Wis. 349, 80 N. W. 599; *Case v. Hoffman,* 100 Wis.
314, 72 N. W. 390, 74 N. W. 220, 75 N. W. 945; *Rowell
v. Smith,* 123 Wis. 510, 102 N. W. 1; *Ellis v. N. P. R. Co.*
80 Wis. 459, 50 N. W. 397; *Russell v. Place,* 94 U. S. 606;
*Lewis v. Ocean N. & P. Co.* 125 N. Y. 341, 26 N. E. 301;
*Waterhouse v. Levine,* 182 Mass. 407, 65 N. E. 822.

The records show that the causes of action in these cases
are not identical, and it does not appear that the precise ques-
tions arising in this action were presented and decided in the
former; hence the rule of *res adjudicata* does not apply.

Some exceptions are presented on the Lindemann appeal
as to the inclusion of some facts in the hypothetical questions
submitted to the experts on the value of the good will which
are irrelevant to the matters alleged and not competent proof

under the complaint. We have examined the objection, but find that the questions contain nothing that can be deemed prejudicially erroneous. We are of opinion that the court's finding fixing the value of the good will is abundantly supported by material and competent evidence.

The same appellants presented numerous requests for specific findings of facts, which were refused by the court. This action of the court is justified, since all material facts involved in the case are sufficiently covered by its findings.

It was found as fact that William F. Lindemann on January 4, 1901, borrowed $18,000 from the old Bank of Viroqua and gave his promissory notes therefor, with interest, and that he pledged collateral to secure payment, and that he applied the money so obtained in payment of his stock in the new bank. These notes, with interest, were paid by him during his lifetime; and these sums went into the hands of a receiver and were by him, under order of the court, paid to the owners of the fund. It is urged that the court erred in denying the demand of the *Rusk* heirs, declaring that the sum so borrowed be treated in equity as a trust fund in his hands, and that its investment in the new bank be held as one made for the benefit of those interested in the fund of the old bank, and that the stock purchased with it and the accumulated profits of the new bank be apportioned between the *Rusks* and the *Lindemanns* in proportion to their original interests in this amount. The argument proceeds upon the basis that such an appropriation was an appropriation by a trustee having no interest in the trust fund in his hands. If such were the fact before us, the court's decision would be surrounded with difficulties. It appears, however, that he obtained the money as a loan from the old bank, of which he was a half owner, that his interest in its assets exceeded the amount so obtained by him, and that he dealt with the fund in every respect as a borrower from the bank. These circumstances tend to justify treating the transaction as a loan. Nor is it clear, under

the evidence, but that the interest paid by him for the use of the money was an equivalent of the profits for the period he so retained it, even if it were treated as an investment in the new bank by the original owners. We are of the opinion that the court committed no error in its adjudication on this question.

An exception is urged to the amount of the allowance compensating William F. Lindemann for the services rendered by him in winding up the bank's affairs. It appears that he rendered services incident to settling the greater portion of its affairs, and that the rate of compensation was less than the court allowed the receiver for like services after Lindemann's decease. It is shown that he received a salary as officer before the bank ceased doing a general banking business, and that the court allowed him compensation for his services at the same rate he had been paid by salary. We find no injustice or want of validity in this allowance.

The foregoing covers all the questions presented for review. We find nothing in the record demanding a reversal or modification of the judgment.

*By the Court.*—Judgment affirmed on both appeals.