DAVIES, Appellant, vs. MEISENHEIMER and others, Respondents.

*March 7—April 12, 1949.*

420

For the appellant there were briefs by *Wood, Warner, Tyrrell & Bruce* of Milwaukee, and oral argument by *Jackson M. Bruce.*

For the respondents there was a brief by *Lines, Spooner & Quarles,* attorneys, and *Charles B. Quarles* and *Irving T. Babb* of counsel, all of Milwaukee, and oral argument by *Mr. Charles B. Quarles* and *Mr. Babb*.

WICKHEM, J.   For many years defendant, Edward J. Meisenheimer, has been a director and president of Meisenheimer Printing Company, a Wisconsin corporation.   More recently he has also been treasurer of the company.   The company is a closely held family corporation and prior to 1940 the directors were Edward J. Meisenheimer and his brothers, Adam, Rudolph, and Joseph.   A sister, Daisy, was the only stockholder other than the directors.   Since 1930 there has been a practice in the corporation of having the corporation advance sums to pay personal obligations and expenses of Edward J. Meisenheimer and other directors.   These withdrawals were acquiesced in by all the stockholders although after the custom had started there was insistence by some of the directors that the indebtedness be repaid.   The Printing Company operates in a building which had been owned by the father of the stockholders but title to which is now in a corporation known as the Meisenheimer Family, Incorporated.   The Printing Company rents the premises from the Family Corporation.   The stockholders in the Family Corporation are the same as those in the Printing Company but the percentage of stock owned by each is different.   For example, plaintiff, Laura B. Davies owns twenty per cent of the stock in the Family Corporation and only one and thirty-seven hundredths per cent of the stock in the Printing Company.   Edward J. Meisenheimer, on the other hand, owns fifteen per cent of the stock in the Family Corporation and thirty-six and thirty-seven hundredths per cent of the stock in the Printing Company.   In 1940 Adam Meisenheimer died.   At that time the company was indebted to him and unable immediately to liquidate

this debt. His shares of stock went to his widow and one of these shares was transferred to his son, Edward A. Meisenheimer, who was thereupon elected a director and put on the company's pay roll as a sales consultant, although he had a full-time job elsewhere. Rudolph Meisenheimer died in 1943 and at that time was indebted to the Printing Company. This indebtedness was settled by canceling his stock in the Printing Company and also in the Family Corporation. Thereafter Edward J. Meisenheimer gave ten shares of his stock to his son, Gillis, who was then elected a director. Gillis had been employed by the company for about twenty years prior to this time. In 1945 Daisy Meisenheimer died leaving her shares of stock in both corporations to plaintiff, Laura B. Davies. Through Edward L. Wood, her proxy, she caused an investigation into the affairs of the two companies. This disclosed that as of April 30, 1946, Edward J. Meisenheimer owed the company $37,436.63 in addition to $10,000 owed the company upon a mortgage loan. Joseph Meisenheimer, brother of defendant, Edward J. Meisenheimer, had worked for the Printing Company for fifty years in July of 1945, when he was discharged as an employee, and at the stockholders' meeting in 1946 was dropped as a director and replaced by the attorney for Edward J. Meisenheimer.

The court upon sufficient evidence found that Edward J. Meisenheimer had been charged with interest on advances to him; that the present value of his stock is in excess of his indebtedness to the Printing Company; that the latter has sustained no damages by reason of the advances and that the indebtedness was sustained with the consent of all the stockholders and without any objection until that made by plaintiff in 1946. It is not disputed that Edward J. Meisenheimer owes the indebtedness of which plaintiff complains. Plaintiff was not a stockholder when the indebtedness was sustained and any acquiescence by her must be the result of imputing to her the assent of her predecessor in title.

Plaintiff contends that defendant as president-treasurer and director of the Printing Company is a trustee as to the stockholders; that as such trustee he owes the utmost fidelity to the corporation and must deal with it in the highest good faith, *Hinkley v. Sagemiller,* 191 Wis. 512, 210 N. W. 839; that it is held in Wisconsin that "directors of a corporation are not permitted to use their position of trust and confidence to further their private interests, nor to become parties to contracts concerning corporate affairs intrusted to their management which conflict with a free and impartial discharge of their duties toward the stockholders." *Timme v. Kopmeier,* 162 Wis. 571, 575, 156 N. W. 961. It is contended that the rule of the Wisconsin cases is that "no dealing by one in fiduciary capacity with himself individually can prejudicially change the situation of the beneficiaries or their property. The application of this rule is not dependent upon the existence either of fraud or mismanagement; for its foundation is in a sound public policy, which would exclude all necessity of investigation of either the honesty or the wisdom of such dealings in a dual capacity." *Shaw v. Crandon State Bank,* 145 Wis. 639, 654, 129 N. W. 794. See also *Matter of Filardo,* 221 Wis. 589, 267 N. W. 312; *Kline v. Little Rapids Pulp Co.* 206 Wis. 464, 240 N. W. 128; *Federal Mortgage Co. v. Simes,* 210 Wis. 139, 245 N. W. 169.

In the latter case this court said (p. 150):

"It is one thing for a stockholder or director to deal with a corporation in a transaction in which he does not represent the corporation. Even in such cases the transaction will be closely scrutinized to see that no advantage has been taken of the corporation. But quite a different principle applies where a director represents both himself and the corporation in such a transaction. In the latter situation it does not matter whether the transaction results in injury to the corporation or not." See also *Koelbel v. Tecktonius,* 228 Wis. 317, 280 N. W. 305.

In Restatement, 1 Trusts, p. 438, sec. 170, comment *l*, it is said in respect of the use of trust property for trustee's own purposes:

"The trustee violates his duty to the beneficiary . . . where he uses the trust property for his own purposes. Thus, he cannot properly use trust money in his business, or lend trust money to himself, or lease to himself land which he holds in trust."

It is further contended that a corporation has no power to make loans to a corporate officer in the absence of statutory authority, citing *Lindemann v. Rusk,* 125 Wis. 210, 104 N. W. 119. The foregoing puts as forcibly as we know how to do so the principal contentions of plaintiff.

Defendants' reply that the indebtedness results in no disadvantage to the Printing Company or its stockholders; that Edward J. Meisenheimer has at all times been a minority stockholder subject to the direction of his fellow stockholders and directors; that, in fact, the board of directors is made up of the owners of less than the majority of stock and could be removed at any time; that neither the directors nor the company is dominated by Edward J. Meisenheimer; that the advances were approved at the time of making by all existing stockholders and directors and that no demand for repayment was ever made until plaintiff acquired one and thirty-seven hundredths shares of the stock and that plaintiff is now the only one who is insisting upon this return. It is contended that under the authorities a Wisconsin corporation may loan money to its officers provided there is no breach of trust arising out of the circumstances of the case. *Lindemann v. Rusk, supra,* is cited to the effect that, unless there are circumstances showing fraud or breach of duty, a director may borrow money from a corporation. It was there said (p. 238):

"It appears, however, that he [the officer] obtained the money as a loan from the old bank, of which he was a half owner, that his interest in its assets exceeded the amount so

obtained by him, and that he dealt with the fund in every respect as a borrower from the bank. These circumstances tend to justify treating the transaction as a loan."

Defendants further contend that since everybody who had any stock interest in the corporation assented to the loans, including plaintiff's predecessor in title, the loans must be considered to be valid and there is no evidence that this defendant took any unfair advantage of the other stockholders, or, indeed, that he did anything to which they did not assent and that was not in accordance with a general and customary practice in the corporation. Defendants point to the fact that Edward J. Meisenheimer had for years been president of the company; that the business had prospered and grown under his leadership; that it is not in need of the funds; that the value of his stock ownership is in excess of the funds borrowed; and that there is no evidence of an improvident management of the concern even if the advances be considered a part of its management.

The case of *Santarsiero v. Green Bay Transport, Inc.*, 249 Wis. 308, 24 N. W. (2d) 659, is relied upon for the assertion that consent of all the stockholders to a transaction precludes them from later objecting or disapproving of the transaction, irrespective of its original validity. It is claimed that there is no showing that the company could use further working capital or that there is any prospect of a loss. Finally, it is claimed that sec. 180.13 (3), Stats., providing that no stockholder's derivative action shall be maintained against directors or officers by the holders of less than five per cent of the outstanding stock except to reach conduct that is wilfully intended to result in a direct or indirect personal benefit or advantage to one or more officers or directors.

We are of the view that plaintiff's contentions cannot be sustained. We do not deal here with a case where an officer of the corporation represented the corporation in executing a contract in which his individual interests are antagonistic to

the corporation. *Kline v. Little Rapids Pulp Co., supra.* We do not deal with a case in which the officer's vote on a corporate matter was in effect sold by some corrupt bargain involved in the negotiation or consideration of a contract. *Koelbel v. Tecktonius, supra. Timme v. Kopmeier, supra; Steven v. Hale-Haas Corp.* 249 Wis. 205, 23 N. W. (2d) 620, 23 N. W. (2d) 768. There is not involved a transaction so obviously injurious to the corporation as to require a finding that no consideration of its interests was in the minds of its officers and directors and that they must have been motivated by self-interest or by the interest of outside parties. *Steven v. Hale-Haas, supra.* We deal with a case analogous to that considered in *Federal Mortgage Co. v. Simes,* 210 Wis. 139, 147, 245 N. W. 169, where a director had sold his property to the corporation and where this court said:

"It is settled in this state at least that a director may have contractual relations with the corporation of which he is a director, but the validity of such contracts will require the utmost candor and fair and open dealing on the part of the director, and all such transactions will be scrutinized closely by the courts for assurance that the interests of the corporation have not been injured by reason of such transactions." Citing *Figge v. Bergenthal,* 130 Wis. 594, 109 N. W. 581, 110 N. W. 798; *Spaulding v. North Milwaukee Town Site Co.* 106 Wis. 481, 81 N. W. 1064; *Milwaukee Cold Storage Co. v. Dexter,* 99 Wis. 214, 74 N. W. 976; *Twin-Lick Oil Co. v. Marbury,* 91 U. S. 587, 3 Sup. Ct. 317, 27 L. Ed. 1019; *Richardson's Executor v. Green,* 133 U. S. 30, 10 Sup. Ct. 280, 33 L. Ed. 516; *Globe Woolen Co. v. Utica G. & E. Co.* 224 N. Y. 483, 121 N. E. 378.

It is the general rule that, except where expressly forbidden by statute or where the loan is in excess of the limit fixed by statute as applicable to loans to officers, a director or corporate officer may borrow from the corporation provided there is no breach of trust in making the loan. See 3 Fletcher, Cyc. Corp. (perm. ed.), p. 427, sec. 955. In this connection see also *Lindemann v. Rusk, supra,* to the effect that, unless there are

circumstances showing fraud or breach of duty, a director may borrow money from his corporation. It is clear from the evidence that there was no overreaching, fraud, or misrepresentation in the original loans and there is no proof that at the time of these loans the making of them was improvident from the standpoint of the corporation in that it unduly impaired its usable capital or liquidity or interfered with its success in any other way. Hence, we think that the cases above referred to apply and that the loans were valid when made. Indeed, there is no attempt in these proceedings to follow the proceeds of the loan as misapplied trust funds. Irrespective of the foregoing, however, the contract was consented to, ratified, and acquiesced in by all of the stockholders and by the board of directors and even if voidable, which is the most that could be claimed for it, is now beyond reach of any attack. In connection with this see 3 Fletcher, Cyc. Corp. (perm. ed.), p. 460, sec. 979, for a list of cases in support of the following text:

"The general rule is that a contract or other transaction between a corporation and its directors or other officers is merely voidable at the option of the corporation, and not absolutely void. It follows that in those jurisdictions, where it is so held, the transaction, if within the powers of the corporation, may be consented to, ratified or acquiesced in by the stockholders, or by the board of directors, if it could be authorized by them. If it is consented to or ratified, with full knowledge of the facts, it is finally and absolutely binding, and neither the corporation nor individual stockholders nor strangers can afterwards sue to set it aside, or otherwise attack its validity."

In view of the foregoing this case comes down to a very narrow issue. If plaintiff who, in fact, never consented to the loans, were now trying to stop a continuance of the practice we might have a different question. That, however, is not the situation. What plaintiff is seeking to do on behalf of the corporation is to require the immediate repayment of these loans and under all the circumstances of this case we deem that a question of corporate policy. In *Steven v. Hale-Haas Corp.*,

*supra,* it was said quite emphatically that unless there is corrupt conduct on the part of the officers and directors or conduct of such improvidence as to lead to the inference that the officers and directors are not attempting to act for the best interests of the corporation, the court cannot interfere in the management of the corporation. The evidence warrants the conclusion of the trial court that the directors are not acting corruptly in their self-interest; that their failure to take corporate action upon these loans is not harmful to the corporation; and that there has been no arbitrary conduct or abuse of discretion. It is hardly necessary to add that what is said applies to the situation presently disclosed by the record and that if in the future a change in circumstances should make continuance of the loans so improvident as to constitute an abuse of discretion plaintiff is not foreclosed from taking similar action.

In view of the foregoing we deem it unnecessary to consider the application of sec. 180.13 (3), Stats., to the facts of this case.

*By the Court.*—Judgment affirmed.